No. 101,674

LETHA MCGINTY AND HAROLD MICHAEL MCGINTY, A/K/A
MICHAEL MCGINTY, *Appellees*, v. THERESA M. HOOSIER;
MARGARET E.C. CLARDY; EDWARD L. STOUT IV; MARTHA LEE
KORBA; EILEEN V. CURTIS; L.J. CURTIS; VICKIE SUE
DIECKGRAFE, F/K/A VICKIE SUE CURTIS; BEVERLY HIPP, A/K/A
BEVERLY CURTIS HIPP; BILLIE HIPP; CHERI L. MACY, F/K/A
CHERI L. CURTIS; TAMMY A. MORLOCK, F/K/A TAMMY CURTIS;
AND CORAL PRODUCTION CORP., *Appellants*.

(239 P.3d 843)

Opinion filed
September 24, 2010.

*Tyler E. Heffron*, of Triplett, Woolf & Garretson, LLC, of Wichita, argued the cause, and *Timothy E. McKee*, of the same firm, was with him on the brief for appellants.

*Robert W. Christensen*, of Law Office of Robert W. Christensen, of Medicine Lodge, argued the cause, and *Gregory L. Bauer*, of Law Offices of Bauer, Pike, Pike, & Johnson, Chtd., of Great Bend, was with him on the brief for appellees.

The opinion of the court was delivered by

JOHNSON, J.: The defendants in this quiet title action, Theresa M. Hoosier, *et al.* (collectively referred to as defendants), appeal the district court's granting of summary judgment in favor of the plaintiffs, Letha McGinty and Michael McGinty (collectively referred to as the McGintys). The district court judgment declared that, by virtue of a sheriff's deed in partition dated April 8, 1974, the McGintys acquired ownership of 100% of the surface interest and 50% of the minerals interest in and to the South Half of the Northeast Quarter (S/2 NE/4) of Section Thirty-six (36), Township Twenty-one South (21S), Range Fourteen West (14W), Stafford County, Kansas (hereafter referred to as the subject tract). Defendants only challenge the McGintys' ownership of the minerals interest. We affirm the district court judgment, quieting title in the McGintys.

### FACTUAL AND PROCEDURAL OVERVIEW

The defendants' claims in this case are founded upon a challenge to an action commenced in 1973 in which one of the issues involved the partitioning of the subject real estate. A recitation of the chain of title on the subject property and the procedural history of the prior partition action is likely to become confusing and difficult to follow. Accordingly, we will try to summarize wherever possible and avoid a detailed description of any fact or procedural anomaly that is not essential for this decision, while assuring the parties that we are intimately familiar with all the nuances of the case.

In 1890 and for some 50 years thereafter, the subject real estate was owned by W.L. Curtis. Upon W.L.'s death, his widow, Margaret C. Curtis, acquired title and deeded a remainder interest to five people: Donald C. Hutchinson, Lester A. Curtis, General Curtis, William L. Curtis, and Harry W. Curtis. In 1953, Donald, General, William, and the children of Harry—Ruth Curtis and Donna Curtis—deeded their respective interests in the surface property rights to Lester, but each reserved their respective interests in the

oil, gas, and minerals rights. At that point, Lester owned 100% of the surface and 20% of the mineral interests; Donald, General, and William each owned 20% of the mineral interests; and Ruth and Donna each owned 10% of the mineral interests.

Lester quitclaimed one-half of his interest to his wife, Opal. Upon his death in 1964, Lester's children—Beverly Hipp, Lester A. Curtis, Jr., and Donald Curtis—and five grandchildren—Billie Hipp, Cheri Curtis, L.J. Curtis, Vickie Curtis, and Tammy Curtis—acquired fractional interests in the other one-half of Lester's interest. In 1972, Opal transferred her interest to her son, Lester A. Curtis, Jr.

A year later, Opal's daughter, Beverly Hipp, acting as Opal's conservator, filed suit to set aside Opal's deed to Lester, Jr. At the same time, Beverly (acting individually and as Opal's conservator), together with Helen Stout (the daughter of General Curtis and his widow, Martha Curtis), filed a partition action on a different tract of real estate owned by the Curtis family (hereafter referred to as "other tract"). The named defendants were: Donald, William L., Lester, Jr., Cheri, L.J., Vickie, and Tammy. The two actions were consolidated.

Included with Lester, Jr.'s, answer to the partition action on the other tract was a cross-petition, praying for the partition of additional real estate coowned by members of the Curtis family. The ultimate amended cross-petition included the subject tract, which was simply described by the legal description without any mention of mineral interests. Only the successors to Lester's interest, *i.e.*, those who owned 100% of the surface interest and 20% of the mineral interest, were identified in the cross-petition as owners of the subject tract.

Helen Stout, who had at least a remainder interest in 20% of the mineral interest of the subject tract, filed an answer to the amended cross-petition in which she declared that she had no ownership interest in the subject tract. Likewise, William L. Curtis, Jr., who owned at least a remainder interest in one-half of William's interest, *i.e.*, 10% of the total mineral interest, was named and served in the consolidated partition action. The owners of the remaining 50% of the mineral interest were not personally served in

the action, were apparently not served by publication notice, and did not participate in the action partitioning the subject tract. From the title information in the record, it appears that the owners of that remaining 50% interest are the successors in interest to Harry's 20% interest (previously identified as passing 10% each to Ruth and Donna); the successors in interest to Donald's 20% interest (identified as the Testamentary Trust of Donald C. Hutchinson); and the successors in interest to one-half of William's interest, *i.e.*, 10% (identified as having passed to Paul Dallas Curtis).

Ultimately, the district court determined that it possessed both personal and subject matter jurisdiction to partition the subject tract and ordered that the land be sold. In describing the ownership of the property, the court only listed Lester's successors, *i.e.*, the persons who collectively owned all of the surface interest and 20% of the mineral interest. After the applicable statutory procedures and notifications, the sheriff conducted a public sale at which the property was sold to Michael and James McGinty. The recorded sheriff's deed, dated April 8, 1974, describes the property by its legal description, without any mention of severed mineral interests, and recites that the sheriff had been directed by the court to convey to the purchaser "all of the right, title and interest which the plaintiffs and the defendants have or claim to have in and to said real estate." Apparently, all of the net sale proceeds were distributed to a trustee for Opal Curtis.

Some 32 years later, the McGintys filed this quiet title action, claiming to own all the surface interest and one-half of the mineral interest. Eventually, both sides filed a motion for summary judgment. The defendants claimed that the McGintys did not own any of the mineral interest because the sheriff's sale of the mineral interests was void. They argued that the court was without personal or subject matter jurisdiction to partition the mineral estate because only 20% of the mineral interest owners were ever properly served with notice, violating the "unity of partition rule"; that any sale of those mineral interests without proper notice violated due process; and that the sheriff's deed was defective because it made no mention of the mineral reservation. Alternatively, defendants

claimed that only 20% of the mineral interest could pass with the sheriff's deed.

The McGintys countered that the only persons who could attack the partition judgment were those owners who were never properly served with notice of the partition action and had not participated in that action, *i.e.*, the owners of or successors to the 50% of the mineral interest which the McGintys were not claiming. They also suggested that because none of the pleadings or court orders mentioned the mineral interests and the sheriff's deed did not contain a mineral reservation, the deed was effective to transfer all of the interests of all of the parties to the action.

The district court agreed with the McGintys. The court found that all of the named parties in the 1973 lawsuit were served with the amended cross-petition to partition the subject tract, even though not all of the parties were represented by counsel or filed an answer. The court determined that the named parties in the partition action who had an interest in the subject tract collectively owned all of the surface rights and one-half of the mineral rights. The court noted that nothing in any of the partitioning court's orders or in the sheriff's deed purported to except or reserve the mineral interests, but to the contrary, the sheriff's deed indicated that it was conveying all of the interests of the plaintiffs and defendants in the partition action. Therefore, the court found that the sheriff's deed had conveyed all of the surface rights and 50% of the mineral rights. The court further noted that there had been no appeal of the district court's confirmation of the sheriff's sale, and that to allow a challenge to that judgment over 30 years after it was entered would run counter to the principle that the law favors finality of litigation.

The defendants present their challenge on appeal in the form of multiple stated issues and subissues, although the crux of their argument is that the sheriff's deed did not convey the mineral interests of those persons who were parties to the partition action. The defendants begin by asserting that Kansas law requires that all of the owners of a particular property must be made parties to an action to partition that property. They contend that requirement is the law established in prior Kansas cases and in the applicable

partition statute. They attempt to bolster their argument by citing to cases from selected other states and by stating policy considerations they believe favor their result. The defendants also complain that the partitioning court failed to rule on a motion to strike which raised the same defense: that the McGintys knew or should have known that they were not purchasing any mineral interests at the sheriff's sale; and that the plaintiffs in this action admitted that all of the property owners are necessary for a valid partition.

The defendants then argue that any partition of any interests in the minerals, including that interest owned by the cross-petitioners, is void and defective. They contend that the undisputed fact that not all of the mineral interests owners were parties to the partition action deprived the district court of jurisdiction to partition any interest in the minerals.

Further, the defendants argue that, given that a sheriff's deed is akin to a quitclaim deed, it could not convey the mineral interests which the court lacked jurisdiction to partition. They also believe that it is determinative that the pleadings and sheriff's deed failed to mention the mineral interests, *i.e.*, no mineral interests were partitioned.

Defendants make a brief argument that the existence of controverted facts should have precluded summary judgment, albeit they fail to identify any disputed facts that were material to the court's decision. Included under this issue is the curious argument that affirming the district court will not resolve the title issues on the subject tract, because they allege one cannot know whose mineral interests should be taken away to make up the 50% interest awarded to the McGintys.

Finally, and alternatively, defendants assert that, at most, the sheriff's deed only conveyed 20% of the mineral interest. The argument is based on the cross-petition's description of ownership and the testimony of an attorney who was involved in the partition action.

We will take the liberty to consolidate and redefine the issues for discussion.

## NECESSITY TO JOIN ALL OWNERS

We begin by addressing the defendants' suggestion that all par-

tition actions in this State must include as named parties each and every owner of all of the interests that may be outstanding in the real estate to be partitioned. We disagree with that premise.

*Standard of Review*

The defendants ask us to decide a question of law over which we exercise unlimited review. See *Owen Lumber Co. v. Chartrand,* 283 Kan. 911, 916, 157 P.3d 1109 (2007) (appellate court exercises unlimited review over district court's conclusions of law).

*Statutory Provisions*

The applicable partition statute in effect at the time the subject tract was partitioned, K.S.A. 60-1003, remains essentially the same today. See L. 1963, ch. 303, sec. 60-1003. K.S.A. 60-1003(a) provides:

"(1) When the object of the action is to effect a partition of personal or real property or an estate or interest created by an oil, gas or mineral lease or an oil or gas royalty, the petition must describe the property and the respective interests of the owners thereof, if known.

"(2) If the number of shares or interests is known, but the owners thereof are unknown, or if there are, or are supposed to be, any interests which are unknown, contingent or doubtful, these facts must be set forth in the petition with reasonable certainty.

"(3) Persons claiming or having a specific or general lien upon all or any portion of the property, may be made parties.

"(4) An allegation of ownership of an interest implies an allegation of right to possession of the property, and it is not necessary to claim the remedy of ejectment in an action for partition."

Defendants specifically point to the provision in subsection (a)(1) directing that the petition *must* describe the property and the respective interests of the owners. They argue that such a mandatory pleading requirement manifests a legislative intent that, in their words, "all owners of the entire tract involved in a partition must be made parties to obtain a valid partition." In effect, defendants are contending that the statute makes each and every owner of any interest in the subject tract an indispensable party to the partition action, although they do not state their contention in those terms. See *City of Hutchinson v. Hutchinson, Office of State Employment Service,* 213 Kan. 399, 405, 517 P.2d 117 (1973) (" 'In-

dispensable parties are those who must be included in an action before it may properly go forward.'") (quoting *Cities Service Oil Co. v. Kronewitter*, 199 Kan. 228, Syl. ¶ 1, 428 P.2d 804 [1967]).

To the contrary, the statutory language upon which the defendants rely does not expressly make all property owners indispensable, or even necessary, parties to a partition action. See *City of Hutchinson*, 213 Kan. at 405 (quoting *Cities Service*, 199 Kan. 228, Syl. ¶ 1) ("'Necessary parties are those who must be included in an action either as plaintiffs or defendants unless there is a valid excuse for their nonjoinder.'"). Rather, the provision is clearly intended to address the required contents of a partition petition. Even then, the statutory directive contains the disclaimer that the respective interests of the property owners need only be described "if known."

Here, the amended cross-petition contained the statutorily required contents. It stated the legal description of the subject tract, without reservation or exception, which would indicate that partition was being sought on the entire property. *Cf.* K.S.A. 58-2202 ("every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant"). Further, it described the respective interests of the persons alleged to be the owners of the property. The problem in this case was simply that the petition's description of the property owners was incomplete and therefore incorrect, which in turn made the description of the real estate subject to partition inaccurate.

However, the statute does not state or even imply that such a mistaken description or false allegation deprives the court of subject matter jurisdiction. To the contrary, K.S.A. 60-1003(b) provides that defendants' answers "shall include allegations of the nature and extent of their respective interests" and further provides that the answers "may also deny the interests of any of the plaintiffs, or any of the defendants." Obviously, the statute contemplates that the petition's description of property ownership may well be a disputed matter in the partition action, *i.e.*, an accurate description would not be a jurisdictional requirement.

In short, K.S.A. 60-1003 does not require that all owners of the entire tract involved in a partition must be made parties to obtain a valid partition, as defendants contend. Support for the defendant's assertion, which we take the liberty of calling the "mandatory joinder rule" for purposes of this opinion, must come from a source other than the partition statute.

## Kansas Case Law

Defendants argue that the holdings in prior Kansas cases have been consistent with their proffered mandatory joinder rule, requiring all owners to be named parties to a partition. However, at oral argument, defendants' counsel conceded that no Kansas case has specifically held that the failure to name all property owners as parties to a partition action (whether by mistake or by choice) always deprives the district court of subject matter jurisdiction to partition the interests of those property owners who are named parties. We submit that such an absence of explicit precedent is understandable, because the defendants' premise is not the law in this state.

Defendants first point to *High Plains Oil, Ltd. v. High Plains Drilling Program—1981, Ltd.*, 263 Kan. 1, 6, 946 P.2d 1382 (1997) (hereafter *High Plains*), which they believe clearly states that all owners are necessary parties to a partition action. The only vaguely collateral nexus that *High Plains* has to the issue before us is that it happened to involve a partition suit.

There, a coowner of an interest in an oil and gas lease had mortgaged the leasehold interest before seeking relief in bankruptcy. When another leasehold owner filed a partition action, the mortgagee of the bankrupt coowner sought to enforce the bankruptcy's automatic stay. The district court concluded that the debtor had no equity in the lease and modified the stay, allowing the partition to proceed. The lease was partitioned and sold, and the proceeds of the sale were paid to the county to satisfy the bankrupt coowner's delinquent property taxes. The mortgagee appealed, claiming a priority interest in the sale proceeds. The Court of Appeals reversed and remanded; however, on remand the district court again ordered the proceeds be paid to the county. After another reversal

by the Court of Appeals, this court granted the county's petition for review and ultimately determined that the county had priority over the mortgagee's claims. 263 Kan. at 2-7.

*High Plains* was a fight between a county and a mortgagee over which one had priority to the proceeds from the sale of a leasehold interest in which the bankrupt owner had no equity. The defendants point to a district court finding that was recited in the appellate decision but which had nothing to do with the opinion's analysis. Even then, the actual finding was: "K.S.A. 60-1003, the partition statute, is clear that only owners are necessary parties to the action." 263 Kan. at 6. Obviously, that finding dealt with the fact that neither the owner's mortgagee nor the county were owners of the property in that case. Moreover, declaring that *only* owners can be necessary parties is not the same as saying *all* owners must be necessary parties. *High Plains* does not support the defendants' proposed mandatory joinder rule.

Likewise, defendants point us to the century-old partition action in *Hazen v. Webb*, 65 Kan. 38, 68 Pac. 1096 (1902). Again, the case is distinguished by the intervention of lienholders into the partition action. Moreover, the primary issue involved a district court's authority upon receiving a partition case after a change in venue.

In *Hazen*, a coowner transferred an interest in jointly owned property that was subject to judgment liens. The grantee filed a partition action against coowners of a portion of the jointly owned property, and subsequently the venue of that action was changed to another district court. After the change in venue, the lienholders on the grantee's interest filed an answer and cross-petition that included a demand to partition all properties jointly owned by all the coowners. The cross-petition request that all coowned property be partitioned required joinder of additional coowners, and the receiving court's authority to order the joinder was the principle issue in the case.

In determining that it had the authority to order the joinder of additional owners and to include all the property in the partition, *Hazen* noted that the general policy of the law is to avoid a multiplicity of actions. 65 Kan. at 42. Hazen opined that, to effect that

general policy, a court of equity which has assumed jurisdiction of a subject matter can reach out and draw in the entire subject matter and all interested parties in order to enter and enforce a full, complete, effectual, and final decree adjusting the rights and equities of all parties in interest. The opinion went on to declare that "[n]o decree will be granted until all necessary parties are before the court, if jurisdiction can be obtained." 65 Kan. at 42. In applying those principles to the facts in *Hazen*, the court found:

> "[O]n account of the interlacing of interests and the overlapping of liens, that any effectual, enforceable and protective decree might be entered, it was almost an imperative necessity that all of the joint property and all the parties interested therein should be brought before one court in one litigation. For, in no other manner conceivable could an effectual decree determining the several rights and protecting the different interests of all parties be obtained." 65 Kan. at 41-42.

The general authority of the court in a partition action has been codified in K.S.A. 60-1003(d), entitled "General powers of judge," which states:

> "The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests, or may refuse partition if the same would result in extraordinary hardships or oppression."

Likewise, "K.S.A. 60-219(a) defines which parties are to be joined in an action as necessary for just adjudication." *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 535, 216 P.3d 158 (2009).

In other words, *Hazen* does not tell us anything that we do not already know, *i.e.*, a partitioning court has the equitable and statutory power to order the joinder of parties and property interests, and if the property interests of nonjoined parties are so intertwined with the property subject to partition that their interests will be adversely affected by an adjudication of the action, the court should require their joinder before going forward with the lawsuit. Contrary to the defendants' interpretation, the case does not instruct us that a partition action can *never* proceed to judgment without the joinder of all owners of all interests in the subject property, *i.e.*, that all owners are always necessary and indispensable parties in every partition action.

The defendants also cite to *Witt v. Sheffer*, 6 Kan. App. 2d 868, 636 P.2d 195 (1981), *rev. denied* 231 Kan. 802 (1982), for its discussion of the "unity of partition rule." That rule requires that each cotenant have the right to occupy the whole property before the cotenant may bring a partition action. 6 Kan. App. 2d at 870. Here, the cross-petitioner had an interest in all of the surface rights with the corresponding right to occupy the property and unquestionably had standing to bring the partition action. If anything, the rule could cut against the defendants because of their limited right to occupy the property as fractional mineral interest owners. Nevertheless, *Witt* does not support the defendants' mandatory joinder rule and is of no benefit to them here.

Finally, defendants attempt to conjure up support from *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, 168 Kan. 259, 212 P.2d 348 (1949). There, the assignee of a 60% interest in two oil and gas leases, each subject to a gas purchase contract, was attempting to cancel the contracts without making his assignors and co-owners parties to the action. Because all owners were beneficiaries of the gas purchase contract, this court held that an action for cancellation of that contract could not proceed without joinder of the remaining interest owners. 168 Kan. at 268-69. Again, the lesson to be learned from *Toklan* is that the determination of a necessary or indispensable party in a particular action turns not on the type of action, *e.g.*, a partition, but rather on whether the court can arrive at a just adjudication without joining that party in the action, *i.e.*, whether the nonjoined party's interests will be adversely affected by the court's judgment.

Accordingly, we find that the case law in this state does not support the defendants' contention that Kansas has a mandatory joinder rule for partition actions, requiring all property owners to be named parties in order to vest the district court with jurisdiction to partition the interests of those owners who are named parties. Rather, a person or entity who challenges a partition judgment based on the failure to join a property owner in the partition action must take the additional step required in any other type of action. The challenger must show that the nonjoined person or entity was a necessary or indispensable party to the action, *i.e.*, that the prop-

erty interests of the nonjoined party were adversely affected by the judgment partitioning the named parties' property interests.

*Other States*

The defendants argue that we should be persuaded by the law in some other states to judicially adopt our own mandatory joinder rule for partition actions. For instance, the defendants are particularly enamored with the South Dakota Supreme Court's decision in *Weitzel v. Felker*, 76 S.D. 216, 76 N.W.2d 225 (1956). *Weitzel* held that a partition action was void where one of the 11 joint tenants was not made a party to the partition proceeding. The court viewed the nonjoined owner as an " 'indispensable part[y]', whose interest is such that a final decree [could not] be entered without affecting" his rights. 76 S.D. at 218, 220. Because he was considered an indispensable party to the partition proceeding, the court held that the judgment entered was void not only as to the unnamed owner, but also as to the other parties who were named in the action. 76 S.D. at 220.

First, we would note that the statutory law in South Dakota differed from our 1963 partition statute. The South Dakota statute expressly required that a summons in a partition action "must be directed to all the joint tenants and tenants in common, and all persons having an interest in, or any lien of record by mortgage, judgment, or otherwise, upon the property or upon any particular portion thereof." S.D. Codified Laws Ann. § 37.1406 (1960 Supp.). See *Weitzel*, 76 S.D. at 218. As previously noted, the Kansas partition statute does not contain a similar requirement for the issuance of a summons to all owners of all interests, but rather only requires the petition to include a *description* of the property and ownership interests. See K.S.A. 60-1003.

More importantly, however, a nonjoined joint property owner who would qualify as an indispensable party in a partition action, *i.e.*, whose interest was such that a final decree could not have been entered without adversely affecting his or her rights, could seek relief from the partition judgment in this state based upon his or her status as an indispensable party. See *City of Hutchinson*, 213 Kan. at 405-06 (finding failure to join indispensable party deprived

court of jurisdiction). There is no need to have a special mandatory joinder rule in that circumstance.

Moreover, we discern no compelling policy reason to create a rule in this state that forces a property owner to join all owners of all property interests in order to partition the particular portion of the property in which the petitioner has an interest. For instance, consider the circumstance in which two people jointly own only the surface rights and the severed minerals interest is coowned by numerous persons or entities holding varying interests, *e.g.*, a $\frac{1}{64}$ working interest or a $\frac{1}{128}$ overriding royalty interest. There is no practical, logical, or legal reason for denying the surface owners the right to sever their property interests through a partition action just because they failed to assume the burden of ascertaining, locating, and serving summons on all of the mineral interest owners. The interests of the surface estate and mineral estate in that instance are not so intertwined that a nonjoinder would create a prejudicial, adverse effect. The relief sought by the surface owners will not be impacted by an accurate or even an incorrect determination of how the mineral interest is owned; they will split the surface ownership regardless of who owns the minerals. On the flip side, the mineral interest owners would be totally unconcerned with the surface ownership and would have no desire to assume the financial burden of participating in a lawsuit over the surface rights. A mineral interest owner only wants to know how any mineral production is to be split among the mineral interest coowners. Moreover, especially if there are minerals being produced on the property, the mineral interest owners will likely not want to have their interests partitioned and sold.

Accordingly, we decline to create a new mandatory joinder requirement for partition actions in this state. The efficacy of a judgment in a partition action in which less than all owners were named parties must turn on whether the property interest of a nonjoined owner has been prejudiced or adversely affected by the partition judgment.

*Other Arguments*

Defendants point to a statement in the McGintys' response to the defendants' summary judgment motion to argue that the McGintys have admitted that all property owners are necessary for a valid partition. We need not consider whether the statement is an admission. Parties are not permitted to define the law for the courts through agreements, admissions, or stipulations. See *Bright v. LSI Corp.*, 254 Kan. 853, 859, 869 P.2d 686 (1994) (litigants' agreement on legal questions ineffective to bind court).

Defendants also assert that their arguments in this case were raised in the partition action through a motion to strike, upon which the partitioning court did not rule. That is a complaint the defendants should have made in the partition action. We are only concerned with the partitioning court's final judgment.

### VALIDITY OF PARTITION JUDGMENT

After asserting that a court is not permitted to go forward with a partition action without having all owners as named parties, the defendants cite to *State ex rel. Secretary of SRS v. Clubb*, 30 Kan. App. 2d 1, 4, 39 P.3d 80 (2001), for the proposition that the lack of statutory authority to make a particular order or judgment is akin to a lack of subject matter jurisdiction and is subject to collateral attack as being void.

*Standard of Review*

The determination of jurisdiction is a legal question subject to unlimited review. *State v. Woolverton*, 284 Kan. 59, Syl. ¶ 3, 159 P.3d 985 (2007).

*Analysis*

We first note that the result which the defendants seek is not consistent with their void judgment argument. If the district court did not have subject matter jurisdiction, the entire judgment in the partition action would be a nullity. See *In re Marriage of Welliver*, 254 Kan. 801, 803, 869 P.2d 653 (1994) (judgment void if court lacked subject matter jurisdiction; void judgment is a nullity). Yet, the defendants allege that only the transfer of the minerals estate is void. They do not explain how the court acquired subject matter

jurisdiction over the surface owners if a mandatory joinder of all owners is required to obtain subject matter jurisdiction in a partition action.

Nevertheless, as explained above, we reject the defendants' underlying premise that a mandatory joinder rule exists in this state and find that a court does have the statutory authority to partition less than all of the property interests of all of the owners of a tract of real estate, so long as the remaining property interests are not adversely affected. Accordingly, we consider the validity of the partition judgment from the viewpoint of each class of defendants: the cross-petitioner; the persons described as property owners in the cross-petition (listed owners); the persons not identified as owners in the cross-petition, but who were named as parties in the consolidated action and were served with the cross-petition (unlisted participating owners); and the persons who were not parties in the consolidated action and were not served with the cross-petition (nonjoined parties).

*Nonjoined Parties*

Obviously, an owner of a fractional minerals interest who was not joined in a partition action that resulted in a sheriff's sale of that interest to a third party would be adversely affected. See *Walker v. Hutchinson City*, 352 U.S. 112, 115, 1 L. Ed. 2d 178, 77 S. Ct. 200 (1956) (due process requires that an owner whose property *is taken* be served with proper notice); *Chapin v. Aylward*, 204 Kan. 448, 454, 464 P.2d 177 (1970) (due process requires that notice of legal proceedings be given by means reasonably calculated to inform all parties *whose legal rights are directly and adversely affected*); *Pierce v. Board of County Commissioners*, 200 Kan. 74, 84-85, 434 P.2d 858 (1967) (failure to provide direct service denied landowners due process *when their property interests were sold* at tax foreclosure sale).

However, in this quiet title action, the McGintys are not claiming that they acquired the 50% mineral interest upon which the owners thereof were not served with the amended cross-petition for partition of the subject tract. Accordingly, those owners still have their respective interests in the subject tract and still possess all incidents

of ownership accorded to fractional mineral interest owners. Based upon McGintys' limited claim of ownership, there was no taking of the nonjoined parties' mineral interests and there is no due process violation. Moreover, the adjudication of the other property interests has not prejudicially affected the nonjoined owners' property interests. Therefore, the nonjoined owners have no basis upon which to challenge the validity of the sheriff's sale or, for that matter, any incentive to do so.

*Cross-petitioner*

Lester, Jr., filed the cross-petition which requested a partition of the entire interest in the subject tract without excepting or reserving any minerals interest. See *Central Natural Resources v. Davis Operating Co.*, 288 Kan. 234, 242, 201 P.3d 680 (2009) ("all minerals belong to the landowner and are considered part of the realty so long as they reside on, in, or under the land"). The district court's sale confirmation order gave the cross-petitioner the relief that he requested, a purported sale of the entire tract. Then, because the cross-petition inaccurately described Lester, Jr.'s, ownership interest as including the 80% of the minerals in which he did not have an interest, he theoretically received more compensation for his partitioned interest than he was entitled, if one assumes that part of the sheriff's sale proceeds are allocable to the mineral estate. While Lester, Jr., might now be experiencing seller's remorse because of the current value of the mineral interest, he has no basis to assert that the nonjoinder of other mineral interest owners in the partition action, for which he was solely responsible, violated his right to due process or adversely affected his property interest. The partition judgment is valid as to him.

*Listed Owners*

In addition to the cross-petitioner, the other successors to Lester's interest of all of the surface interest and 20% of the mineral interest were listed in the cross-petition as owners of the subject tract and fully participated in the partition proceedings. They were all represented by counsel, and a guardian ad litem was appointed to represent any minors.

Nevertheless, defendants suggest that even the named, partici- pating property owners were denied due process because the cross- petition failed to notify them that the mineral estate was being partitioned. To the contrary, identifying the property to be parti- tioned by its legal description, without noting any exceptions or reservations, put the parties on notice that the entire estate was involved. See *Central Natural Resources*, 288 Kan. at 242 (minerals considered part of the realty). The represented owners had ample opportunity to challenge or be heard on the question of the extent of the property to be partitioned. There was no due process vio- lation.

Further, defendants argue that the mineral interest was not part of the sheriff's sale because neither the court documents nor the sheriff's deed specifically described the mineral interests. Again, defendants have it backward. Neither the court documents nor the sheriff's deed purported to except or reserve the mineral interests. See K.S.A. 58-2202 (every real estate conveyance passes all of gran- tor's estate unless intent to pass less is expressed or necessarily implied in terms of grant). As noted, the sheriff's deed expressly stated that, in conformance with the court's order, it was conveying all interests of all plaintiffs and defendants in the consolidated par- tition action.

Moreover, Lester's successors accepted the proceeds of the sheriff's sale, which as noted were in excess of what they were entitled. They did not file a direct appeal challenging the form of the pleadings, the description of the property, or the order of sale. At this late date, they have no basis on which to collaterally attack the judgment. See K.S.A. 60-2103(a) ("the time within which an appeal may be taken shall be 30 days from the entry of the judg- ment"); *Hawkinson v. Bennett*, 265 Kan. 564, 589, 962 P.2d 445 (1998) (collateral estoppel may be invoked where the parties are the same or in privity, the rights and liabilities of the parties on the issue was decided by judgment on the merits, and the issue was necessary to support the judgment).

*Unlisted Participating Owners*

As an alternative argument, the defendants contend that only the 20% mineral interests owned by the listed owners, Lester's successors, was transferred by the sheriff's deed. Although defendants repeatedly refer to the remaining 80% of the mineral estate, the 50% interest that the McGintys do not claim is not in issue in this quiet title action. Effectively, then, the alternative position is that the McGintys did not acquire the 30% of the mineral interests owned by the parties that were served with the cross-petition but were not described as owners, *i.e.*, Helen and W.L., Jr.

In addition to the arguments asserted above, the defendants contend that the failure to describe Helen and W.L., Jr., as owners deprived them of adequate notice and service with respect to a partition of their mineral interests. However, as noted, both unlisted owners were served with the cross-petition for partition, which included a description of the entire subject tract. Both had the opportunity to file an answer, pursuant to K.S.A. 60-1003(b), denying the alleged interests of any of the plaintiffs or defendants. In fact, Helen filed an answer to the cross-petition in which she affirmatively disavowed having any ownership interest in the subject tract. Accordingly, when the court ordered the sheriff to sell and convey "all of the right, title and interest which the plaintiffs and the defendants have or claim to have in and to said real estate," the sale included the mineral interests of Helen and W.L., Jr.

Granted, the partition judgment erroneously excluded Helen and W.L., Jr., from the allocation of the sheriff's sale proceeds. However, their claim for a share of the sale proceeds was against the other parties, specifically Lester's successors, and not against a purchaser at the sheriff's sale who had no involvement in the partition action. Having failed to protect their interests in the partition action when given the opportunity to do so, Helen and W.L., Jr., cannot now assert their interests in this quiet title action.

The defendants also rely on the testimony of Emerson Shields, who was an attorney involved in the partition action. He testified that he learned from the abstractor that only one-fifth of the mineral interest was involved in the lawsuit and that he had announced

at the sheriff's sale that the conveyance would be subject to a four-fifths mineral reservation. Shields also alleged that he had prepared a contract that included the reservation of mineral rights, which he says Letha McGinty signed, albeit a signed contract was not introduced into evidence in this action. The defendants contend that the McGintys knew or should have known they were only buying 20% of the mineral estate.

However, "[w]hen a deed is delivered and accepted as performance of a contract to convey, the contract is presumed to be merged in the deed." *Palmer v. The Land & Power Co.*, 172 Kan. 231, 237, 239 P.2d 960 (1952). Specifically, if an agreement provides for a mineral reservation, but the deed contains no provision for a mineral reservation, the inference is that the agreement for a mineral reservation "was waived and superseded by the deed." 172 Kan. at 237. Here, the sheriff's deed contained no mineral reservation with respect to the interests of the plaintiffs and defendants in the partition action.

In a related argument, defendants contend that a sheriff's deed is akin to a quitclaim deed in that it only transfers the interest which the grantor possessed at the time of the transfer. We do not need the analogy. K.S.A. 60-2416 provided that a sheriff's deed "shall vest in the purchaser as good and perfect an estate in the premises therein mentioned as was vested in the person or persons against whom the . . . order was issued." Moreover, a sheriff's deed is construed with the judicial proceedings of which it forms a part, and it "conveys no greater title than is authorized by the judicial proceedings." *Aguilera v. Corkill*, 201 Kan. 33, 36, 439 P.2d 93 (1968). Here, the judicial proceedings authorized the sale of the entire tract, without mineral reservation. The participants in the partition action were vested with 50% of the mineral estate. Therefore, the sheriff's deed conveyed that one-half mineral interest.

## SUMMARY JUDGMENT

### Standard of Review

This court's review of a decision based on summary judgment is well settled:

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009) (quoting *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 [2007]).

The district court's memorandum decision noted that there were many controverted facts listed in the parties' motions and responses. The defendants use that statement as support for their argument that summary judgment was inappropriate because of the existence of disputed material facts. See *Shamberg*, 289 Kan. at 900 (summary judgment proper when there is no genuine issue as to any material fact.)

Unfortunately, the defendants are unclear as to what facts need to be resolved in order to apply the law and decide the case. See *State v. Conley*, 287 Kan. 696, 703, 197 P.3d 837 (2008) (" ' " 'Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority or in the face of contrary authority, is akin to failing to brief an issue.' " ' ") (quoting *State v. Torres*, 280 Kan. 309, 321, 121 P.3d 429 [2005]). They do mention that the district court's finding that Shields' testimony was not persuasive indicates that the court was weighing evidence. However, that testimony was not material, given that any contract would have merged into the provisions of the sheriff's deed.

The chain of title, the respective ownership interests of the parties, and the identity of the participants in the prior consolidated lawsuit are not contested by the defendants. We discern that all of the material facts necessary to quiet title in the McGintys were not in dispute, and summary judgment was appropriate.

As a subissue, the defendants contend that the district court made a blanket finding that the McGintys own 50% of the mineral

estate without stating whose interest is to be taken away to satisfy that one-half interest. Therefore, they argue that if we affirm the district court judgment, a title examiner will be unable to identify the current owners of the mineral estate, which will complicate the division of the nearly one-half million dollars in suspended royalties. We find the argument to be disingenuous, at best.

To begin, this lawsuit is a quiet title action filed by the McGintys. The court's order clearly and explicitly resolved the issue presented by finding that the McGintys were the owners of the surface rights and one-half of the oil, gas, and other minerals that may be produced from the S/2 NE/4 of 36-21-14, Stafford County, Kansas. The defendants did not counterclaim to quiet title in the remaining 50% of the mineral estate.

Nevertheless, the district court found that the McGintys acquired their one-half mineral interest from those persons who were served with the cross-petition for partition in the prior lawsuit. To spell it out for the defendants, the mineral interest to be "taken away" is the 20% held by those identified in the cross-petition (Lester's successors), the 20% held by Helen, and the 10% held by W.L., Jr. We are confident that a reasonably competent title examiner can ascertain the current ownership of the mineral interests.

In conclusion, we find that the district court's granting of summary judgment, quieting title in the McGintys, was appropriate and correct.

Affirmed.