NOT DESIGNATED FOR PUBLICATION

No. 113,709

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LUCINDA JUNE FAUBION,
*Appellant*,

v.

CURTIS W. PHILLIPS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed July 15, 2016.
Affirmed.

*Kevin Zolotor* and *Morgan O'Hara Gering*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Robert E. Keeshan*, of Scott, Quinlan, Willard, Barnes & Keeshan, LLC, of Topeka, for appellee.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam:* In this appeal, we must decide if the district court had jurisdiction to
find Lucinda June Faubion in contempt of court for failing to comply with its order
dividing personal property. It did, and we affirm.

*A couple seeks partition of real estate.*

After living together for about 1 1/2 years, Faubion and Curtis W. Phillips decided
to go their separate ways. In August 2012, Faubion filed a petition for the partition of real

1

property she jointly owned with Phillips. The district court ordered the parties into mediation.

Then, in December 2012, Faubion asked the court to enforce a settlement agreement the parties had reached but not yet signed. Basically, the agreement provided:

- Faubion would ultimately dismiss the petitions for protection from abuse she had filed in Pawnee County;
- Faubion would pay Phillips $25,000 for the real property and assume the debt secured by a mortgage on the property;
- Phillips would be allowed to remove all personal property from the premises because he vacated the premises under court order; and
- Phillips would sign all documents necessary to effectuate the agreement.

After taking evidence on the matter, the district court found the settlement contract valid and binding on Faubion and Phillips.

But the settlement agreement did not specify which items of personal property belonged to Phillips. So, the court heard testimony on the issue and afterwards listed items of personal property that belonged to Phillips, as well as some items belonging to his father, Ralph Phillips, and his daughter, Kristen Phillips.

After this, the court found that all issues regarding two horses allegedly owned by Kristen Phillips would have to be decided in a separate action. To keep the peace, the court ordered Phillips' father to be present when Phillips and his daughter removed their personal property from the house. The court provided that either party could request civil standby assistance from the Pawnee County Sheriff's Office during the exchange. The court also ordered that the temporary protection from abuse orders in Pawnee County would be extended until the property removal was completed.

2

In April 2013, Phillips' father went on to the real estate and recovered some shipping containers that were supposed to contain all of Phillips' personal property other than the appliances in the house.

*Phillips seeks court assistance to recover his personal property.*

In December 2013, Phillips started a contempt action stating that Faubion had refused to return many of the items of personal property the court had awarded to him. The district court ordered Faubion to appear and show cause why she should not be held in indirect contempt.

During the contempt trial, Phillips testified that he went to Faubion's home in Oklahoma to see if his property was there. Phillips took pictures of items on Faubion's property that he claimed was personal property as set out in the court's prior order. The items included: GE washer and dryer, pellet stove plate, Harmon pellet stove, black wheelbarrow, chainsaw, chainsaw case, air compressor, GE dehumidifier, truck pack, green gate panels, Slimvibe, wobbler sprinklers, pole set, Circle Y saddle with a unique nylon belly strap and silver medallions, and a horse named April. Phillips testified that he knew the air compressor was his because he modified it by putting a new hose reel, a green hose, and new motor on it like the one in the photograph. He testified he knew that the pole set was his because he built it for his daughter. A normal manufactured pole set would have a weighted rubber base and smaller poles than the one he had made.

In order to take pictures, Phillips pulled the door open to a trailer on Faubion's property and stepped inside. He also opened the door to a garage on her property, stepped inside, and took pictures. Phillips testified there was no "no trespassing" sign and the gate to the property was open. Faubion objected to the admission of the photos because Phillips broke the law to obtain them. The court responded by saying: "Might be true in a criminal case if law enforcement was doing it" and admitted the photographs.

3

After hearing the evidence, the court found Faubion to be in indirect contempt of court for her willful failure to comply with the court's orders to return Phillips' personal property. It then ordered her to return the items to Phillips within 30 days. We need not repeat the long list of items found in the court's order, as the parties are well aware of what the court ordered.

In Faubion's request for the court to reconsider the matter, she contended that Phillips had abandoned his property when he did not retrieve it within 30 days as specified in the settlement agreement. She also argued that at the contempt trial the court erroneously admitted into evidence some photographs of the property in Oklahoma because the photos were obtained through trespass. She also argued there was new evidence that justified reopening the case. Faubion also argued that she did not have an obligation to ensure that Phillips receive his items according to the court's order.

The court denied Faubion's motion for reconsideration. It found that Phillips did not abandon his property. Phillips picked up the storage containers from the real estate, but not all of his personal property was in the containers. Phillips did not go onto the premises after that because he was restricted from the premises due to the protection from abuse order.

The court rejected Faubion's request to reconsider on the basis of illegal conduct. The court found that Faubion knew she was in violation of the court's order because she took Phillips' personal property and transported it to Oklahoma. The court found Faubion's various explanations at the hearing inconsistent, including her assertions that

- the property was owned by her late husband;
- the property was owned by Bobbi Lee or her son;
- the property was planted by Phillips;

4

- Phillips stole appliances from the house, and Phillips abandoned the appliances.

The court also denied Faubion's request to reconsider its attorney fee award.

Faubion appeals, raising six issues. For her first two, she claims the trial court lacked subject matter jurisdiction to hear a contempt action and had no jurisdiction over property that did not belong to either party. For her third and fourth issues, Faubion contends that the trial court should not have admitted the photographs and for the first time on appeal contends the trial court used an incorrect standard of proof for a contempt proceeding. The fifth issue focuses on the finding that Faubion was in contempt of court and her final issue claims the court erred when it found her in indirect contempt regarding Phillips' personal property. We will take up the issues in that order.

*The district court had jurisdiction to order the division of property and enforce its orders.*

In a convoluted argument, Faubion contends that she simply violated provisions of a settlement contract, not any orders of the court. She contends that the district court did not have subject matter jurisdiction to hold her in contempt if she did not violate any orders of the court.

Obviously, whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 166, 210 P.3d 105 (2009).

Indeed, the indirect contempt statute, K.S.A. 2015 Supp. 20-1204a provides that "[w]hen an *order* in a civil action has been entered, the court that rendered the same may

5

order a person alleged to be guilty of indirect contempt of such order to appear and show cause why such person should not be held in contempt . . . ." (Emphasis added.)

Our review of this matter is hindered by Faubion's failure to include a transcript of the March 2013 hearing. The journal entry states that the district court heard evidence and found the settlement contract valid and binding. The settlement agreement provided that Phillips would be permitted to remove all personal property from the premises because he vacated the premises under court order. But the settlement agreement did not provide which items of personal property belonged to Phillips.

Instead, the district court heard evidence and listed specific items of personal property that belonged to Phillips, as well as to his father, Ralph Phillips, and his daughter, Kristen Phillips. The court ordered that Phillips' father be present when Phillips' and his daughter's property was removed from the house. The court provided that either party could request civil standby from the Pawnee County Sheriff's Office during the exchange. At a later hearing, the district judge recalled that he

> "found that a binding settlement agreement was reached in that the Defendant, Mr. Phillips, did not contest the agreement relating to the real estate through mediation.
>      But I also held the other provisions of the settlement agreement relating to personal property issues are ambiguous and subject to construction by the Court. And that's what the rest of that hearing involved."

At another time, the court specifically referred to the journal entry as an "order entered in a Chapter 60 civil case that was in effect a partition combined through a settlement agreement obtained in mediation and as refined by the Court through its order in March of 2013."

We are mindful that partition of the real estate and division of personal property is the relief Faubion and Phillips both sought. If the court had jurisdiction to enter the

division order, it certainly had jurisdiction to enforce its order. The court did not merely construe an ambiguous term in a contract—it divided property. The settlement contract did not define what personal property belonged to Phillips. The court heard evidence and ordered that Phillips was entitled to certain specific items. This is akin to the division of personal property in domestic cases. In our view, the court had subject matter jurisdiction to find Faubion in contempt for not complying with its orders.

*The court had jurisdiction to decide whether personal property on the real estate belonged to Phillips, Faubion, or someone else.*

Faubion contends that the district court was without subject matter jurisdiction over the personal property that belonged to Phillips' father and Phillips' daughter because they were not parties to the action. Faubion contends that the court therefore did not have authority to find her in contempt regarding that property. She raises this issue for the first time in this appeal. No appeal of the court's partition order has been made.

This is a partition action. Partition allows two or more persons who own property together to end their multiple ownership. All property capable of being held in cotenancy is subject to partition. *Gore v. Beren*, 254 Kan. 418, 422-23, 867 P.2d 330 (1994).

K.S.A. 60-1003 describes the procedure to bring an action for partition of personal or real property located in the state. The general authority of the court in a partition action is codified in K.S.A. 60-1003(d):

> "The court shall have full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests, or may refuse partition if the same would result in extraordinary hardship or oppression."

A partition proceeding both determines the parties' interests and orders the partition. *Nelson Energy Programs v. Oil & Gas Technology Fund*, 36 Kan. App. 2d 462, 470-71, 143 P.3d 50 (2006). Failure to name all property owners as parties to a partition action does not necessarily deprive the district court of subject matter jurisdiction to partition the interests of the property owners who are named parties. *McGinty v. Hoosier*, 291 Kan. 224, 232, 239 P.3d 843 (2010). The *McGinty* court stated:

"Accordingly, we find that the case law in this state does not support the defendants' contention that Kansas has a mandatory joinder rule for partition actions, requiring all property owners to be named parties in order to vest the district court with jurisdiction to partition the interests of those owners who are named parties. Rather, a person or entity who challenges a partition judgment based on the failure to join a property owner in the partition action must take the additional step required in any other type of action. The challenger must show that the nonjoined person or entity was a necessary or indispensable party to the action, *i.e.*, that the property interests of the nonjoined party were adversely affected by the judgment partitioning the named parties' property interests." 291 Kan. at 235-36.

The facts here are clear. Faubion and Phillips jointly owned real property. The settlement contract provided for the partition of the real property and that each party would be entitled to their own personal property. There is no question that the district court had subject matter jurisdiction over the real property and that all the personal property was located on the real property. On a motion to enforce the settlement contract, the district court heard evidence and determined specific items to be Phillips' personal property. But it also determined some items to be Phillips' father and Phillips' daughter's personal property. The district court did more than partition the named parties' property interests.

Indeed, the court found that some of the property at issue was the personal property of nonparties, but under the *McGinty* rule, that is immaterial. The property was

on the land that was the subject of the partition action. Clearly, the court had jurisdiction to rule that the items Faubion took to Oklahoma were not hers. Faubion was held in contempt over property that she took off the real estate. Thus, the court did have jurisdiction to hold Faubion in contempt.

*There is no civil exclusionary rule.*

Faubion contends that the photographs admitted at the contempt hearing were obtained illegally. She says that public policy demands that this court find that a trial court in a civil action has no discretion to admit illegally obtained evidence when the illegal actor is a party to the action and the illegal conduct is done solely to obtain evidence to be used in litigation. She also contends she should have been given a new trial because she had receipts that proved she bought the property in the photographs. The district court did not make a finding as to whether Phillips' conduct was illegal. The district court stated that was a matter for the criminal courts of Oklahoma.

The exclusionary rule is a judicially created remedy that allows for the suppression of illegally obtained evidence to deter the government from engaging in unconstitutional conduct. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 640, 176 P.3d 938 (2008). In *Divine v. Groshong*, 235 Kan. 127, 134-35, 679 P.2d 700 (1984), our Supreme Court declined to extend the rule to civil cases in which neither the State nor any state officers are parties.

The exclusionary rule is not the appropriate remedy in this civil case. Faubion's constitutional rights were not violated, and there was no police misconduct. Since there is no reason to have a new contempt trial, we will not address the admission of receipts Faubion contends to have.

We find no error here.

9

*We will not address the issue concerning the evidence standard.*

Faubion contends that the clear and convincing evidence standard of proof applies to a contempt hearing because a finding of contempt permits the court to remove a person's liberty and property interests. She acknowledges that she is raising this issue for the first time on appeal, but contends that two exceptions apply: (1) the claim involves only a question of law; and (2) finding that a higher burden of proof is required is necessary to prevent denial of fundamental rights. She contends the fundamental rights at issue are due process, property, and liberty.

Issues not raised before the trial court generally cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). There are exceptions:

(1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case;

(2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and

(3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 778 (2009).

The court did not state at the hearing or in its journal entry what standard of proof it used. Whether the preponderance of the evidence standard of proof is unconstitutional in a contempt hearing is a purely legal question, but the standard of proof the district court actually used in this case is a question of fact that could have been resolved if Faubion had raised this issue below. Whether a fundamental right is at stake depends, in part, on the merits of Faubion's contention. Though, here, the district court merely ordered her to return Phillips' personal property to him.

A brief review of the law of civil contempt is helpful at this point. K.S.A. 2015 Supp. 20-1204a(a) provides that the party alleging contempt must file a motion requesting an order to appear and show cause accompanied by an affidavit "specifically setting forth the facts constituting the alleged violation." Upon order, the person alleged to be guilty of indirect contempt is to appear and show cause why the person should not be held in contempt. K.S.A. 2015 Supp. 20-1204a(a). "If the court determines that a person is guilty of contempt such person shall be punished as the court shall direct." K.S.A. 2015 Supp. 20-1204a(b). The statute does not specify the standard of proof the district court should apply to determine whether a person is guilty of contempt.

Civil contempt is a remedial or corrective action meant to coerce a party into action. The party in contempt can be confined until the court-ordered action is performed. *State v. Jenkins*, 263 Kan. 351, 358, 950 P.2d 1338 (1997). The party in civil contempt must be permitted to "unlock the door of the jail" by doing what the party previously failed to do. *In re J.T.R.*, 47 Kan. App. 2d 91, Syl. ¶ 6, 271 P.3d 1262 (2012). Civil contempt differs from criminal contempt in this manner. The intent of the penalty for civil contempt is to enforce the court's order, not to punish. The penalty for criminal contempt, on the other hand, is punitive. 47 Kan. App. 2d at 95-96. If the court simply wants to punish a party for contempt, then the due process rights that would attend any criminal charge apply. 47 Kan. App. 2d at 101.

Because this is a civil contempt proceeding and the fundamental due process rights attendant with a criminal contempt proceeding do not come into play, we will not take up this issue for the first time on appeal.

*There was sufficient evidence to find Faubion in contempt of court.*

Faubion contends that the evidence was insufficient to support a finding of contempt because she did all she was legally required to do and there was no evidence that she denied Phillips access to the home.

There is a dual standard of review in an appeal from a finding of contempt of court. An appellate court reviews the district court's factual findings to determine if the findings are supported by substantial competent evidence and applies a de novo review to the court's legal conclusion that the alleged conduct is contemptuous. An abuse of discretion standard is applied in reviewing the sanctions imposed. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009); *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 154, 323 P.3d 184 (2014). Appellate courts do not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 608, 351 P.3d 1287 (2015); *In re Marriage of Dimond*, No. 93,557, 2006 WL 2806621, at *2. (Kan. App. 2006) (unpublished opinion).

Appellate review focuses on whether the facts of the case show conduct that constitutes contempt. *In re Marriage of Brotherton*, 30 Kan. App. 2d 1298, 1301-02, 59 P.3d 1025 (2002). Civil contempt is the failure to do something ordered by the court for the benefit or advantage of another party to the proceeding. *Jenkins*, 263 Kan. at 358. Before one can be punished for contempt in not complying with the decree of a court, a particular or precise thing to be done by the party proceeded against must be clearly and definitely stated. *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 927, 128 P.3d 364 (2006). Whether conduct is contemptuous depends on the nature of the conduct and the surrounding circumstances, including the intent and good faith of the party charged with contempt. *In re Marriage of Brotherton*, 30 Kan. App. 2d at 1302.

The settlement agreement provided:

> "c.     Defendant would be allowed to remove all personal property from the residence or any place personal items may be kept since he vacated the premises under Court Order under the supervision of the Pawnee County Sheriff's Department by use of civil standby at a mutually agreeable time, but in any event, no later than 30 days from the execution and filing of this agreement.
>
>     . . . .
>
> "3.4     Personal Property of Defendant. The Plaintiff agrees that the Defendant shall own, hold, and possess all of the personal property herein set over to him . . . ."

The court found that issues remained with regard to the settlement agreement, including what items of personal property belonged to Phillips. The court set out specific items that belonged to Phillips and to his father, Ralph Phillips, and his daughter, Kristen Phillips. The court found that Phillips was entitled to the following appliances: television, pellet stove, kitchen stove, refrigerator, washer, dryer, and dehumidifier. With regard to how the property was to be exchanged, the journal entry stated:

> "Ralph Phillips may take possession of his property at any time.
>
>     . . . .
>
> "Further, the Court finds that as to the appliances in the house and personal property situated in the house that has been awarded to the Defendant or his daughter, Kristen Phillips, the manner of obtaining the same shall require that Ralph Phillips is present at all times and that either of the parties may request a civil standby from the Pawnee County Sheriff's Office during the exchange."

The court extended the temporary protection from abuse order in Pawnee County until the settlement agreement had been completed. Phillips testified that the court strongly suggested that he use Tabler's Furniture to collect his appliances from the house to avoid a conflict. The transcript from the hearing dividing property is not in the record.

At the hearing on the contempt motion, both Faubion and Phillips testified that they understood that Tabler's was to remove the appliances from the home. They also agreed that Faubion's attorney sent a letter to Phillips in the fall telling him to remove the appliances.

Their testimony differed on who was responsible for the failure to set up a time that Tabler's could remove the appliances. Phillips testified that he called Tabler's 2 days after the hearing and asked Byron Griffin, who worked at Tabler's, to contact Faubion to make the arrangements to remove the appliances. Phillips understood that he could not contact Faubion directly because of a protection from abuse order. Phillips testified that he followed up with Griffin in May, July, and September or October, but Griffin told him he was unable to make contact with Faubion.

Griffin's testimony mostly corroborated Phillips' account:

"Q.     Did you take some steps to get those appliances?

"A.     Probably. I think I might have called Cindy to see if we could set up a time. Of course, she worked out of town, so—I usually don't get involved in relationship issues. So I—in a relationship issue like that, I don't take anything out of the house unless there's a law enforcement officer available or somebody there with some responsibility that—I'm not going to go in the middle of a conflict. So, we just kind of had a hard time meeting up at her time and my time and Curtis' time to get the items out of the house.

"Q.     And how many times did you try contacting her?

"A.     Oh, I'm going to say probably by phone two o[r] three probably.

"Q.     And how did you—were you able to directly talk to her on the phone?

"A.     I think I left a message once and the other two times I just called and got the answering machine. So—

. . . .

"Q.     Did [you] ever receive a call back from Cindy?

"A.     Not that I [re]call.

14

"Q. Were you able ever to make arrangements to be able to get that—those appliances?

"A. No, other than I knew that she was moving and we were to get them probably within a certain amount of time. And her dad probably could have let me in to get them but I don't think that ever happened."

Griffin testified that he received at least two different requests from Phillips, spanning over months, for him to remove the appliances.

Faubion's testimony, on the other hand, was that she contacted Tabler's numerous times and Tabler's told her repeatedly that it could not remove the appliances because it was unable to get ahold of Phillips about payment:

"A. There were numerous contacts—

"Q. To get that accomplished.

"A. —my attorney by e-mail, by letter, by phone call, specifically stating out the appliances in almost every e-mail since the beginning. I even spoke with Tabler's on several occasions. Calling them. There for awhile it was almost every month I was either in the store, talking to them, and not specifically this one guy that was here, but somebody in Tabler's. They were all well aware of it. That they told me repeatedly that they had not gotten ahold of Mr. Phillips and he hadn't contacted them about payment. And I told them all the way up to the time in May when I was moving home in 2013, that someone needed to come. And I talked to Mr. Ralph Phillips when he came and his grandson to remove those personal items. We talked about that.

"Q. That was in April of 2013?

"A. Correct."

But Griffin testified that he had no concern about Phillips paying him for the work. Phillips' father testified:

"Q. And at that time did she ask you to get rid of or take the appliances on that date.

15

"A. No.

"Q. You don't recall that?

"A. No, I wasn't supposed to remove any appliances. That was Tabler's job."

Faubion testified that the last time she saw the appliances other than the pellet stove was in October, in the house in Kansas. She speculated that Phillips stole the appliances from the house so he could bring her to court.

The evidence supports a finding that Faubion's conduct was contemptuous. Given the circumstances, some cooperation by Faubion was necessary to carry out the court's order awarding the appliances to Phillips. Specifically, the relationship between Phillips and Faubion was combative. A protection from abuse order restricted Phillips from the real estate, and Faubion had possession of the home where the appliances were located. The settlement contract provided that Phillips "would be allowed" to remove his personal property, and the district court strongly suggested that he use Tabler's to accomplish this task.

With regard to the scheduling dispute, Phillips' testimony was corroborated by Griffin's testimony; whereas, Faubion's testimony—that Tabler's would not remove the property because it had not received payment from Phillips—was refuted by Griffin. Though phone records showed a call from Faubion to Tabler's in April 2013, Griffin speculated the call might have been to fix her washing machine. If Phillips' and Griffin's testimony is believed and Faubion's testimony is disbelieved, then Faubion did not allow Phillips to remove the appliances because she did not answer or return Griffin's calls.

Moreover, no reasonable construction of the court's order would have permitted Faubion to take three of the appliances to Oklahoma and deny having them. That action rendered useless the determination by the court that the appliances belonged to Phillips. See *Edmiston v. First Nat'l Bank of Holcomb*, 242 Kan. 13, 18, 744 P.2d 829 (1987).

16

Because there was conflicting testimony, the district court had to make factual findings. The court found that Faubion took control of personal property that belonged to Phillips under the court order and transported them to Oklahoma. Among the property found at Faubion's Oklahoma residence were four of the appliances awarded to Phillips: the washer, dryer, pellet stove, and dehumidifier. The court found Faubion's various explanations for the property inconsistent. Concerning the washer and dryer, the court said:

> "The washer and dryer in the trailer. The explanation offered by Ms. Faubion is that its—the trailer belongs to Bobby Lee, it doesn't belong to her and that the washer and dryer has to be his or her son's, Larry Powell.
>
> "Notwithstanding the fact that from the evidence it would appear to be the exact type of washer and dryer that was referenced in the original Defendant's Exhibit D from the March 11th, 2013 hearing. And coupled with the fact that within that trailer, unexplainably is the ceramic pad for the [pellet stove]. I didn't hear any explanation as to who that belonged to other than Mr. Phillips said it belonged to him.
>
> "Court would find that the Plaintiff, Lucinda Faubion is in indirect civil contempt for her willful failure to follow the orders of the District Court."

The same district judge presided over the partition hearing, the contempt hearing, and the motion to reconsider hearing. That judge was in the best position to make a credibility determination. We hold the evidence was sufficient to sustain a contempt finding.

*We consider the evidence concerning the reloader and the property of Phillips' daughter.*

Faubion contends there was insufficient evidence for the court to find her in contempt in relation to the reloader, the property of Phillips' father, and the property of Phillips' daughter. We agree with her about the reloader.

17

The journal entry from the contempt hearing ordered Faubion to return a Dillon reloader to Phillips or reimburse him for it. This was error. At the contempt hearing, Phillips' father was asked if he found anything related to guns in the shipping containers he retrieved. Phillips' father testified, "I think a reloader or something was sat down on the floor so it wouldn't get banged up." The court acknowledged its error in its order regarding Faubion's motion to reconsider:

"With regard to Plaintiff's claim of an erroneous Court ruling, the Court acknowledges that a portion of the ruling relating to the reloader may have in fact been error based upon the testimony of R. Phillips. The evidence at the contempt hearing showed that Defendant's father did testify that the 'reloader' was turned over to the Defendant in the storage bin that the Defendant received. However, the error in finding Plaintiff did not turn over the 'reloader' is not enough for a new contempt hearing and the balance of issues relating to a contempt finding as to personal property retained by the Plaintiff are confirmed by the record."

Thus, the court did effectively reverse its order that Faubion return the reloader, but it found the one error did not justify a new contempt hearing.

It is a different story concerning Phillips' father's property and the property owned by Phillips' daughter. The chainsaw, wobbler sprinkler, and wheel barrow were identified as Phillips' father's property in the court's journal entry. Faubion's contention that Phillips' father could have gone on the property and retrieved his personal property at any time has merit. However, Phillips' father testified that as far as he knew his property was supposed to be in the containers. And, the evidence at the contempt hearing showed that Faubion took his items with her to Oklahoma in secret and denied that she did. That is why she was held in contempt for this property.

The same is true with respect to Phillips' daughter's property. The circle Y saddle, JVC video camera, and pole set were identified as Phillips' daughter's property. Phillips'

18

daughter did not testify that she attempted to contact Faubion or that Faubion refused her request to retrieve her property. However, Faubion took the circle Y saddle and pole set to Oklahoma and claimed she did not have them.

We have considered Phillips' motion for attorney fees and hereby grant the motion. After examining the record on appeal, assessing the arguments, and reviewing the affidavit filed with the motion, we award a judgment of $8,000 in attorney fees to Phillips and his counsel of record plus $83.36 for printing costs against Faubion.

Affirmed.