(271 P.3d 1262)
No. 105,505

In the Interest of J.T.R., Date of Birth: XX/XX/2000 and J. M. R., Date of Birth: XX/XX/2002.

Opinion filed February 24, 2012.

*Roger Batt*, of Haysville, for appellant natural mother.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREENE, C.J., HILL, J., and MICHAEL E. WARD, District Judge, assigned.

HILL, J.: In this appeal we focus on how a court can use its contempt powers to enforce its orders. The mother of two minors failed to obey a no-contact court order by visiting her children who were the subjects of child in need of care petitions. As a result, the State accused her of indirect civil contempt of court. Civil contempt proceedings are remedial in nature, seeking the party's compliance with the court's orders. Here, the district court found her to be in contempt of court and simply sentenced her to serve 5 days in jail as punishment for violating the court's order. Because the court gave the contemnor no way to purge herself of contempt, we hold that sentence to be wholly punitive. The court failed to give the contemnor "the keys to the jail." The court had no authority to impose a criminal contempt sentence in a civil contempt proceeding. Therefore, we vacate the penalty.

If we view this action as an indirect criminal contempt of court proceeding, we must reverse the contempt finding because the contemnor was forced to testify against herself in violation of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights.

*The case history reveals a violation of the court's order.*

In two child in need of care cases, the district court found each child in need of care and ordered them to remain in the custody of the Secretary of Social and Rehabilitation Services. The court ordered V.R., their mother, not to contact either child. This in-

cluded such contact as written, verbal, face-to-face, email, or contact through a third party. Any visits V.R. intended to have with the children had to be supervised. Later, the court amended the order, telling V.R. to not go to the father's house, his place of employment, the children's school, or the children's resource home.

Following that, the State filed an affidavit and accusation in contempt against V.R., alleging that she had twice violated the order by having unsupervised contact with her children—first at Youthville and then later at their school. The State asked the court to find V.R. guilty of indirect civil contempt and to order that she "be punished by detention in the Sedgwick County Adult Detention Facility." In turn, the court ordered V.R. to appear and show cause why she should not be punished for contempt.

V.R. was the only witness at the contempt hearing. At one point V.R.'s counsel objected upon the ground that she should not be required to testify against herself in violation of her Fifth Amendment privilege. The court overruled the objection and held this was a civil proceeding, and in such an inquiry, V.R. had no right against self-incrimination. After considering V.R.'s testimony, the district court ruled V.R. had, in both instances, violated its orders and found her in indirect civil contempt. The court ordered V.R. to serve 5 days in the county jail, noting:

"I don't know how much this is going to help. It may not—it probably won't help much at all. But we've had too many discussions during the course of this case saying you've got to stop doing these things and if you don't stop doing them something's going to happen. Well that's today."

The judge warned V.R. that he would start doubling the length of the jail term for each subsequent violation in which she was found in contempt. V.R. appeals.

*This appeal is not moot.*

The State argues this appeal is moot because the court has terminated V.R.'s parental rights to both children. We do not agree for several reasons.

First, we were told at oral argument that the termination order is the subject of a different appeal and therefore is not final. Fur-

ther, the status of the children is not material to the issues we must address. We are dealing with a contempt action. True, the disobedience of the court's order arose from child in need of care cases but we are not determining the merits of the child in need of care decisions; we look only at the separate action of the contempt proceeding.

As a general rule, an appellate court does not decide moot questions. "An appeal will not be dismissed for mootness, unless it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights." *McAlister v. City of Fairway*, 289 Kan. 391, 400, 212 P.3d 184 (2009).

We are not convinced that this case is moot. V.R. has been sentenced to serve 5 days in jail. That order has not been modified or withdrawn in any way and can be enforced once we return jurisdiction of this case to the district court. Further, the court ordered that any future unsupervised contact with her children would lead to doubling or even redoubling the length of her incarceration. It is conceivable that V.R. may try to visit with her children even though her parental rights have been terminated. V.R.'s rights are still being affected by this court order.

We will proceed with the appeal.

*We review some fundamental points of the law of contempt.*

Courts exercise contempt powers in order to maintain decorum in all court proceedings, punish those who show disrespect for the court or its orders, and enforce its judgments. Also, courts punish those acts, or failures to act, which obstruct the administration of justice. It has been said that the power of the courts to punish for contempt is one of the powers inherently belonging to the judiciary. It is necessary to the due exercise of the court function. See generally, 17 Am. Jur. 2d, Contempt §§ 1-3. As one federal court put it, the courts possess inherent power to impose silence, respect, and decorum in their presence and submission to their lawful mandates, and the courts are vested with power to initiate contempt proceedings to ensure that the judiciary is not utterly dependent

upon the other branches of government to vindicate judicial authority. *United States v. Neal*, 101 F.3d 993, 996 (4th Cir. 1996).

This inherent authority has now been procedurally regulated in Kansas by the enactment of K.S.A. 20-1201 *et seq.* In fact, our Supreme Court has ruled, "If the district court imposes sanctions for contempt of court, the procedure under K.S.A. 20-1201 *et seq.* regulates that power. No inherent power to punish for contempt exists independent of K.S.A. 20-1201 *et seq.*" *State v. Jenkins*, 263 Kan. 351, 352, 950 P.2d 1338 (1997).

Our statute, K.S.A. 20-1202, sets out two major classes of contempt, direct or indirect contempt. Direct contempt is committed during the sitting of the court or before a judge at chambers. All other contempts are indirect. K.S.A. 20-1202(2). Clearly, in this case, we deal with indirect contempt, as V.R.'s conduct did not occur in the presence of the judge.

Next, it is important to note two additional categories of contempt. They are denominated as civil and criminal contempt. They are distinguished by the intent of the penalty imposed and not necessarily the nature of the underlying legal or equitable action that the court is dealing with. In other words, a civil contempt proceeding may arise in a criminal case and a criminal contempt proceeding may arise in a civil case. Two questions are useful in making the distinction. Is the court seeking the enforcement of its orders? Is the court seeking to punish someone for disrespect or disobedience? If the former is true, then the answer is usually civil contempt; if it is the latter, then the contempt action is criminal.

The Kansas Supreme Court has defined civil contempt as " ' "the failure to do something ordered by the court for the benefit or advantage of another party to the proceeding." ' [Citation omitted.]" *Jenkins*, 263 Kan. at 358. Civil contempt proceedings are remedial in nature and designed to advance the private right of a litigant won by court order. Any civil contempt penalty is intended to be coercive, and relief can be achieved only by compliance with the order. Any sentence imposed for a civil contempt violation must permit the contemnor to " 'unlock the door of the . . . jail and discharge [himself or] herself by doing what [he or] she has previously failed to do.' [Citation omitted.]" *Comprehensive Health*

*of Planned Parenthood v. Kline,* 287 Kan. 372, 417-18, 197 P.3d 370 (2008).

In contrast, behavior held to be criminal contempt is " ' "conduct directed against the dignity and authority of a court or a judge acting judicially, with punitive judgment to be imposed in vindication; its essence is that the conduct obstructs or tends to obstruct the administration of justice." ' [Citations omitted.]" *Jenkins,* 263 Kan. at 358.

Going further, the four subgroups of contempt are not mutually exclusive. Direct contempt of court can be criminal or civil in nature. For example, if a witness becomes belligerent, abusive, and combative to the extent that it disrupts the court proceeding, the court could, through application of its criminal contempt authority, seek to punish the witness for this bad behavior. In such an instance, the court could sentence the witness to a definite term of confinement in jail as punishment. On the other hand, if the witness refuses to testify and has no legal excuse or privilege not to testify, the court could seek to compel the witness to testify by the exercise of its civil contempt authority. In such cases, the court could then order the witness incarcerated in jail until the witness is willing to testify. But, in this civil contempt proceeding, the witness holds the key to the jail by expressing a willingness to comply with the court's order and testify. The penalty distinguishes the class.

Similarly, instances of indirect contempt of court can be criminal or civil in nature. A court could punish the contemnor for disobedience of an order or, instead, seek compliance with the order of the court. If a penalty is imposed for disobedience, then the contempt is criminal in nature. If the object of the procedure is to coerce the contemnor into complying with a court's order, then it is a civil contempt action. But we must emphasize that the *procedure* a court must follow for either criminal or civil indirect contempt of court is the same. See K.S.A. 20-1204a(d).

*The procedures for indirect contempt of court must be observed.*

For all indirect contempt of court actions, K.S.A. 20-1204a sets out the procedure that must be followed. First, a party may file a

motion alleging an indirect contempt of court and thus seek the enforcement of a court order. If the motion is accompanied by an affidavit specifically setting out the facts that show an apparent violation of a court order, the court can issue a show-cause order directing the alleged contemnor to appear in court at a definite time and offer any defense to the allegations that the contemnor may wish to present. K.S.A. 20-1204a(a). The affidavit that must be filed is required to be a document given under oath and not merely acknowledged before a notary. See *Meigs v. Black*, 25 Kan. App. 2d 241, 243, 960 P.2d 770 (1998). Because of this, the court has something of evidentiary value to rely upon when issuing the show-cause order.

Next, the show-cause order and the affidavit must be served personally on the alleged contemnor. K.S.A. 20-1204a(b). At the date and time set in the order, the court may try the matter or continue the same as needed. If the court determines the person is guilty of contempt, such person shall be punished as the court shall direct. K.S.A. 20-1204a(c).

*This was initiated as a civil contempt proceeding.*

Following the procedure set out in K.S.A. 20-1204a, the State in this case filed an affidavit and accusation of indirect contempt of court, accusing V.R. of violating the district court's order. As a result, the court issued a show-cause order directing V.R. to appear and show cause why she should not be "proceeded against for indirect civil contempt of Court." This order gave notice to V.R. that the contempt proceeding was civil in nature.

*The court assessed an improper penalty for civil contempt.*

At this point, we want to stress that we make no comment about the finding that V.R. was in contempt of court. That issue is not before us if we view this as a civil contempt action. The evidence from the State's affidavit obviously indicates that V.R. did initiate contact with her children on two occasions in violation of the court's order. We do take issue with the 5-day jail sentence.

The record discloses that the judge was unsure of the penalty that could be imposed here. V.R.'s attorney argued that because

the district court considered this a hearing for indirect civil contempt, it must give V.R. an opportunity to purge herself before ordering her incarcerated in county jail. The judge responded,

"I don't think there is any remedy. I mean, if I had ordered her to sign a document and she hadn't signed it, she could purge herself by signing it. But I don't know of any way that she could purge it. I mean, I just don't think that exists."

Nevertheless, our law on this point is clear. A punitive jail sentence as punishment for violation of the district court's order is available only for criminal contempt, not for indirect civil contempt. See *In re Conservatorship of McRoy*, 19 Kan. App. 2d 31, 34, 861 P.2d 1378 (1993). The 5-day jail sentence imposed here did not permit V.R. to purge her contempt. Nor did it, in any fashion, allow her to lessen her sentence through her conduct and unlock the door of the county jail. The court did not say, for example, that her sentence was suspended and could be reduced by a day for each week that she complied with the court's order and, thus, obtain her liberty and purge her contempt by her obedient conduct. Thus, it follows that the jail sentence was entirely punitive and must be set aside. In *Goetz v. Goetz*, 181 Kan. 128, 138, 309 P.2d 655 (1957), the Supreme Court held:

"If the sentence is limited to imprisonment for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense. Such imprisonment operates, not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience."

In *McRoy*, this court set aside as erroneous a 30-day jail sentence for indirect civil contempt which contained no provision for release if the contemnor complied with the court's order. 19 Kan. App. 2d at 34. Earlier, in *Carlson v. Carlson*, 8 Kan. App. 2d 564, 568, 661 P.2d 833 (1983), this court vacated a 48-hour jail sentence for indirect civil contempt, that was to be served at 12 hours per day on four separate dates. The court found it to be wholly punitive because it contained no provision for the contemnor's release. Similar to the 30-day sentence in *McRoy*, the 5-day sentence here contains no provision for the contemnor's release and is totally punitive.

Like the sentence in *McRoy,* we must set this sentence aside as well.

*If this is a criminal contempt, then the court failed to afford V.R. sufficient due process.*

Interestingly, the State now contends that the contempt proceedings are to be regarded as criminal in nature and the district court properly imposed a punitive sanction for indirect criminal contempt. This change of position by the State cannot be ignored. Even if we view this as a criminal contempt action, we must likewise vacate the sentence because the court failed to afford V.R. due process.

First, the State's accusation unequivocally asks the court to adjudge V.R. guilty of indirect *civil* contempt of court. Thus, the only notice given V.R. was the allegation of a civil contempt proceeding. But, we note the State did ask for V.R.'s incarceration in the accusation.

In our view, it is fundamentally unfair to tell the alleged contemnor this is a civil proceeding where he or she can offer a defense to his or her actions and, then when the contemnor appears, switch the proceeding to a criminal contempt case. Our review of the record persuades us that this contempt of court hearing, by its very nature, was to compel V.R. to abide by the district court's order and was remedial in character. Its purpose was intended to coerce V.R. to comply with the visitation restrictions for the benefit of the children—who as children deemed in need of care were afforded protections by the district court that it felt were appropriate.

We acknowledge that a district court has the authority to find someone in indirect contempt of court and assess a criminal penalty. This is called indirect criminal contempt. But procedural safeguards must be observed. Even if we were to hold there was sufficient notice to V.R., the trial of V.R. was defective because the court forced V.R. to testify against herself.

While there are no Kansas appellate cases on this point, we are persuaded that the Illinois state courts have taken a reasonable approach to this subject. The case most pertinent to ours is *In re Marriage of Betts,* 200 Ill. App. 3d 26, 58, 558 N.E.2d 404 (1990),

where the Illinois Supreme Court mandated all of the procedural safeguards usually associated with a criminal charge to be followed in an indirect criminal contempt proceeding:

"One charged with indirect criminal contempt is entitled to know the nature of the charge against him, to have it definitely and specifically set forth by citation or rule to show cause, and have an opportunity to answer. Also applicable to a respondent in an indirect criminal contempt proceeding are the privilege against self-incrimination, the presumption of innocence, and the right to be proved guilty beyond a reasonable doubt." 200 Ill. App. 3d at 58.

This view was affirmed again by the Supreme Court of Illinois in *People v. Lindsey*, 199 Ill. 2d 460, 471, 771 N.E. 2d 399 (2002).

If we apply these principles to this case, we note the court did not protect V.R.'s right against self-incrimination. V.R. was required to testify over her objection and after she attempted to raise the privilege against self-incrimination. The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any [c]riminal [c]ase to be a witness against himself . . . ." Along the same line, Section 10 of the Kansas Constitution Bill of Rights states, "In all prosecutions, . . . [n]o person shall be a witness against himself."

It is clear that the loss of liberty experienced by a contemnor serving a punitive sentence in an indirect criminal contempt proceeding is no different than the loss of liberty experienced by a person guilty of a statutory violation and serving a sentence for that conviction. Just because one conviction is for contempt and another is for violation of a statute, the penalty is identical. Again, we point out the nature of the contempt proceeding is determined by the penalty sought and not determined by the underlying action, such as the child in need of care case here. We therefore hold that a person charged with indirect criminal contempt has the right against self-incrimination. As a result, if we view this matter as indirect criminal contempt we must reverse and vacate the penalty because V.R. was forced to testify against herself.

Since V.R. had counsel and the accusation in contempt was specific and properly supported by an affidavit with evidentiary value and properly served, we are satisfied that the other safeguards set out in *Betts* have been satisfied here.

We understand the frustration expressed by the judge in this case. Indeed, courts have long pondered over what sentence to impose in a case such as this that would comply with the restrictions of the law of civil contempt. We cannot offer advisory opinions but will repeat the law. Sentences for civil contempt must give contemnors a way through their conduct by which they can secure their release from jail. On the other hand, if the court simply wants to punish a contemnor, then the due process rights that attend any criminal charge should apply. These rights include:

- notice of charge and possible penalty;
- court-appointed counsel if indigent;
- right to trial;
- privilege against self-incrimination;
- right to confront witnesses and to compel testimony.

Since we view this as a civil contempt proceeding, we vacate the sentence.