No. 114,925

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CLAYTON DEION WILMER,
*Appellant*.

SYLLABUS BY THE COURT

1.

Courts are necessarily vested with the inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

2.

The exercise of a court's inherent power must be reasonably necessary for the administration of justice and cannot contravene or be inconsistent with substantive statutory law. Such inherent powers may be exercised as a means of enforcing obedience to a law which the court is called on to administer.

3.

A court has the inherent power to issue a no-contact order in a pending criminal case when there is reason to believe that a party is attempting to intimidate or harass a witness in the case.

4.

Punishment for contempt of court is not the exclusive remedy for the violation of a no-contact order issued during a pending criminal case. If the contemptuous conduct also violates a criminal statute, the government may prosecute the offender.

1

Appeal from Leavenworth District Court; THOMAS M. DAWSON, judge pro tem. Opinion filed October 21, 2016. Affirmed.

*John J. Bryant*, of Bryant Law Office, of Kansas City, for appellant.

*Christopher R. Scott*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: The Kansas Legislature has made it a crime to violate a no-contact order issued at any time during a criminal case. K.S.A. 2015 Supp. 21-5924(a)(4). The district court ordered Clayton Deion Wilmer to have no contact with witness Caitlynn Cruce, his ex-girlfriend, during the pendency of his criminal case, concerned that Wilmer was attempting to convince Cruce to change her testimony. Wilmer was subsequently charged with and convicted of 21 counts of violating the no-contact order. Wilmer challenges the district court's authority to issue such an order and also challenges the statute as a restriction of his free speech rights under the First Amendment to the United States Constitution and Section 11 of the Kansas Constitution Bill of Rights. Because we find that the district court had the inherent authority to issue the no-contact order, the prosecutor had the statutory authority to criminally prosecute Wilmer for violating the no-contact order, and Wilmer failed to define and adequately brief the constitutional issues he raises, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Following a preliminary hearing, Wilmer was bound over on charges of attempted first-degree murder, aggravated assault with a deadly weapon, child endangerment, and being a felon in possession of a firearm. All charges arose out of an incident where he allegedly shot Rudy Hall while Hall was a passenger in a car with Cruce, and Cruce and Wilmer's infant daughter. At the hearing, there was testimony from several witnesses that

2

Wilmer contacted Cruce and attempted to influence the way she testified. There was also testimony that Wilmer had been violent with Cruce in the past. In fact, the preliminary hearing that was to be heard immediately following the one in this case was on a domestic battery charge against Wilmer in which Cruce was the victim. Wilmer was in jail, so he could only contact Cruce using phone calls and letters. The State requested a no-contact order between Wilmer and Cruce pending trial because there had been "a lot of testimony regarding letters and phone calls and perhaps attempts to get her to change her testimony." The State's concern was "not necessarily for the victim's protection because the defendant is in custody, but . . . it is about intimidation, which the Court is well aware does occur in domestic violence cases, and it occurs even when one party is incarcerated." The district court granted the no-contact order, reasoning that "the State has the right to attempt to preserve their evidence, their witnesses . . . from contact with the defendant."

Approximately 3 months later, Wilmer was charged with 21 counts of violating the no-contact order between February 24 and April 22, 2015, in violation of K.S.A. 2015 Supp. 21-5924(a)(4). Wilmer filed a motion to dismiss, arguing that "there is no statutory authority for a District Court Judge to issue a no-contact order upon an incarcerated Defendant in a criminal case." On October 5, 2015, the district court denied the motion. The district court then found Wilmer guilty on all 21 counts. Wilmer was sentenced to 12 months for each count, set to run concurrently.

Wilmer appealed.

ANALYSIS

Wilmer argues that the district court had no authority to issue a no-contact order such that a violation of the order gives rise to prosecution under K.S.A. 2015 Supp. 21-5924(a)(4). In addition, he argues that the provision of that statute that allows the

3

issuance of a no-contact order on a person in prison infringes on the prisoner's rights under the First Amendment to the United States Constitution and Section 11 of the Kansas Constitution Bill of Rights. It is important to note that Wilmer does not dispute the sufficiency of the evidence. The State presented the audio recordings of the phone calls it claimed violated the no-contact order. In other words, if the district court issued a lawful order that was constitutionally enforceable under K.S.A. 2015 Supp. 21-5924(a)(4), then the evidence was sufficient to support the convictions. We will address each of Wilmer's concerns in turn.

*A district court has the inherent power to issue a no-contact order in a pending criminal case.*

The Kansas Supreme Court has long recognized:

"[A] court has certain inherent powers it may exercise[, which are] reasonably necessary for the administration of justice[,] provided these powers in no way contravene or are inconsistent with substantive statutory law. [Citations omitted.] Such inherent powers may be exercised as a means of enforcing obedience to a law which the court is called on to administer." *Wilson v. American Fidelity Ins. Co.*, 229 Kan. 416, 421, 625 P.2d 1117 (1981).

See *Holt v. State*, 290 Kan. 491, 497, 232 P.3d 848 (2010). This inherent power of the courts was recognized at common law. The power is "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' [Citations omitted.]" *Dietz v. Bouldin*, 579 U.S. ___, 136 S. Ct. 1885, 1891, 195 L. Ed. 2d 161 (2016).

There are some limits to this inherent power. The exercise of an inherent power must be a "reasonable response to the problems and needs" confronting the court's fair administration of justice and cannot be contrary to any express grant of, or limitation on,

4

the district court's power contained in a rule or statute. *Degen v. United States*, 517 U.S. 820, 823-24, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996); see *Comprehensive Health of Planned Parenthood v. Kline*, 287 Kan. 372, 419, 197 P.3d 370 (2008); *Wilson*, 229 Kan. at 421. These two principles support the district court's imposition of a no-contact order in this case.

The district court had before it strong evidence that Wilmer was attempting to intimidate a witness into testifying falsely. He was attempting to do this while he was incarcerated in the local jail through phone calls and letters. The district court has a duty to make sure both the defendant and the State get a fair trial. Wilmer's actions were threatening the fair administration of justice, and the district court's response, a no-contact order, was reasonably related to that particular problem.

Second, there is no statute prohibiting such an order during the course of a criminal proceeding. The question is not, as framed by Wilmer, whether a specific statute authorizes the court's action in the case of the court's exercise of its inherent power, but whether a statute or rule prohibits or limits it. Wilmer fails to direct us to any statute or rule that prohibits the district court's no-contact order in this case, and we are not able to find any.

Accordingly, the district court had the inherent power to issue a no-contact order in this pending criminal case when there was reason to believe that the defendant was attempting to intimidate or harass a witness in the case.

*Punishment for contempt of court is not the exclusive remedy for the violation of a no-contact order issued during a pending criminal case.*

Wilmer contends that if the court had the authority to issue the no-contact order, punishment for contempt of court was the exclusive remedy available to it. Accordingly,

5

Wilmer could not be charged criminally but would be limited to the court's statutory authority to punish for contempt. We disagree.

As one federal court put it, the courts possess inherent power to require submission to their lawful mandates, and the "courts are vested with power to initiate contempt proceedings to ensure that the judiciary is not utterly dependent upon the other branches of government to vindicate judicial authority." *United States v. Neal*, 101 F.3d 993, 996 (4th Cir. 1996); see *In re J.T.R.*, 47 Kan. App. 2d 91, 94-95, 271 P.3d 1262 (2012). Today many states, including Kansas, have adopted *procedures* that courts must follow in the case of contemptuous behavior, either direct or indirect. See K.S.A. 20-1201 *et seq*. These statutes generally do not define what action constitutes contempt, nor do they outline the breadth of orders a court may enter in any give case, but they merely set out the procedures that must be followed, such as issuance of a show cause order, opportunity to be heard, etc. before a person is found to be in contempt of court. See K.S.A. 2015 Supp. 20-1204a. Although the court had the authority at common law to punish contemptuous behavior, these statutes now control the procedure to be followed.

As the *Neal* court pointed out, the ability to punish contemptuous behavior was to ensure that the judiciary was not dependent on the executive branch to enforce its orders. But that does not mean that the executive branch may not also prosecute behavior that could be deemed contempt of court. For example, if a defendant stabs his or her attorney in the middle of a hearing, that act may be punishable as direct contempt of court, but few would dispute that it is also a crime that the State would be justified in prosecuting. If a defendant threatens a judge's life during the course of a trial, it is certainly contemptuous behavior but may also be criminally chargeable behavior. The fact that we are dealing with a violation of a court order does not change the result.

So we next examine the criminal statute at issue here. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303

Kan. 472, 473-74, 362 P.3d 1098 (2015). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. 303 Kan. at 813.

K.S.A. 2015 Supp. 21-5924 states:

"(a) Violation of a protective order is knowingly violating:

. . . .

(4) *an order issued* in this or any other state as a condition of pretrial release, diversion, probation, suspended sentence, postrelease supervision or *at any other time during the criminal case that orders the person to refrain from having any direct or indirect contact with another person.*" (Emphasis added.)

The language of the statute is clear. It presumes that the court has the authority to enter no-contact orders during the course of any criminal proceeding. To hold otherwise would make the provision meaningless. The courts presume the legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014).

Moreover, while some of the other subsections in K.S.A. 2015 Supp. 21-5924(a) require that an order be made pursuant to specific statutes, that is not a prerequisite of a finding of guilt under subsection (a)(4). See K.S.A. 2015 Supp. 21-5924(a)(1) ("A protection from abuse order issued pursuant to K.S.A. 60-31105, 60-3106 or 60-3107, and amendments thereto."). The fact that other sections list a statute simply shows that the legislature could have added additional requirements to subsection (a)(4) but chose not to. The statute is not ambiguous as it puts people on notice as to what behavior is

7

criminalized—violating any no-contact order made during the pendency of a criminal case.

The statutory language is also consistent with our discussion herein of the court's inherent power to issue such orders to advance the orderly and fair administration of justice. This is a situation in which the legislature has obviously stepped in to assist the court in the enforcement of its orders by providing for the criminal prosecution of people who fail to follow them. The State is not prohibited from doing so merely because the district court could punish Wilmer for contempt of court.

In sum, punishment for contempt of court is not the exclusive remedy for the violation of a no-contact order issued during a pending criminal case. If the contemptuous conduct also violates a criminal statute, the government may prosecute the offender.

*Wilmer has abandoned his constitutional claims in this case by failing to define and adequately brief them.*

Wilmer's constitutional argument is very short and contains no supporting authority. He argues that K.S.A. 2015 Supp. 21-5924(a)(4) is unconstitutional because it "is not narrowly tailored to serve a legitimate government purpose" and "[t]o the extent that the statute infringes upon any First Amendment right of the accused or of the person they are in contact under these facts, there is no legitimate government interest in prohibiting communication from the jail when all of the calls and letters can be monitored." He cites no caselaw to support his position. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015). An issue not briefed by the appellant is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). Likewise, a point raised incidentally in a brief and not argued therein is also deemed abandoned. *State*

8

*v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Accordingly, we find that Wilmer has abandoned this issue. To do otherwise would force us to speculate as to the nature of his claim.

Affirmed.