NOT DESIGNATED FOR PUBLICATION

No. 116,450

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

ASHLEY (MIKIJANIS) CLARK,
*Appellant*,

and

BRANT DANIELS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed April 21, 2017. Affirmed in part and vacated in part.

*Katherine C. Clevenger*, of Kreamer, Kincaid, Taylor Lipsman, Parks & Arney, LC, of Overland Park, and *Allison G. Kort*, of The Kort Law Firm, LLC, of Westwood, for appellant.

*Adam M. Hall*, of Collister & Kampschroeder, of Lawrence, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and POWELL, JJ.

POWELL, J.:  Ashley (Mikijanis) Clark appeals the district court's contempt finding against her as well as its imposition of a 48-hour jail sentence. The contempt proceedings arose from a dispute between Clark and Brant Daniels regarding Daniels' parenting time on their daughter's birthday. The Parenting Plan dictated that Daniels spend the child's birthday with him in 2016, yet Clark only permitted Daniels to spend time with their daughter from 3 p.m. that day to 8:15 a.m. the following morning. After an evidentiary

1

hearing, the district court concluded Clark had intentionally withheld parenting time from Daniels on their daughter's birthday, found Clark in contempt, and sanctioned her with attorney fees and 48 hours in the county jail. Clark now appeals, claiming the district court erred in finding her in contempt and that the district court violated her due process rights by imposing a jail sanction without advance notice. While we agree with Clark that her due process rights were violated because the district court failed to provide advance notice that a jail term was a possible sanction for contempt and, therefore, vacate the jail sentence, we affirm the district court in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

Daniels and Clark, who divorced in February 2012, are the parents to daughter M.D., born May 7, 2010. M.D. and the couple's other child primarily reside with Clark, with Daniels having parenting time as provided by the Parenting Plan every other weekend (Friday to Monday morning) and every Wednesday overnight. The Parenting Plan also sets forth how birthdays and holidays will be spent. Pursuant to the Parenting Plan, parenting time on M.D.'s birthday was to be divided as follows:

> "H14. Child's Birthday—The child shall spend the child's birthday with parent B in even-numbered years and with parent A in odd-numbered years. The parents shall arrange for the child to have time with the other parent on their birthday, if feasible, or the weekend before or after."

The Parenting Plan designates Clark as parent A and Daniels as parent B. The Parenting Plan does not establish the pickup and drop off times that are to occur on each child's birthday.

According to the Parenting Plan, Daniels was to have parenting time with M.D. on her birthday in 2016—a Saturday—but a dispute between Clark and Daniels arose as to

how the parenting time between the parties would be divided. Daniels believed M.D. should spend the day with him, and Clark believed Daniels should have parenting time from 5:30 p.m. on M.D.'s birthday until 8:15 a.m. the following day.

Between March 1 and March 7, 2016, Clark and Daniels exchanged a number of emails concerning Daniels' parenting time for M.D.'s birthday. Clark maintained that because the majority of the other holidays in the Parenting Plan began at 5:30 p.m., and because the time for the parents' birthdays in the Parenting Plan began at 5:30 p.m. and lasted until the following morning, parenting time on M.D.'s birthday should also begin at 5:30 p.m. Clark also told Daniels that M.D. had a dance recital on the day of her birthday, although apparently there was no such recital. Daniels informed Clark that he had a birthday party planned for M.D. on her birthday. The parties did not resolve the dispute.

In the week before M.D.'s birthday, counsel became involved. Clark offered to "compromise" with Daniels and let his parenting time on M.D.'s birthday begin at 3 p.m. instead of 5:30 p.m. Daniels accepted this compromise under protest and expressly reserved the right to petition the court for relief. Daniels was forced to cancel his planned birthday party for M.D. because his parenting time would not begin until after the party was scheduled to begin. Daniels exercised his parenting time with M.D. on her birthday from 3 p.m. until 8:15 a.m. the following morning, and he exercised his normal parenting time with M.D. on the weekends before and after her birthday.

On May 20, 2016, Daniels filed a verified motion for an order to appear and show cause re contempt, alleging that Clark violated the Child's Birthday provision of the Parenting Plan. Following the presentation of evidence at the show cause hearing on July 22, 2016, the district court made the following relevant findings:

"Based upon the evidence and testimony—and as I stated earlier in the case, I'm familiar with the progress of this case, and I'm familiar with the prior difficulties we've had with [Clark] . . . complying with the orders of the Court.

"In prior matters, she—when the Court specifically ordered that the children were to remain in the school district in Jefferson County, Kansas—McLouth, as I recall—she removed them from that school district, enrolled them in another school district without this Court's permission. That matter, I thought, was resolved.

"Now we're back in court arguing over the definition of the word 'day,' which resulted in [Daniels] not being able to have a day with his child. It resulted in the birthday party for the child being aborted.

"The Court finds that Ashley [Clark] has deliberately and intentionally thwarted and refused to comply with the child custody agreement, which provided that the father on this particular date was to have the day of the child's birthday for visitation.

"The Court finds—you know, the problem I have is I can only do a few things up here. I can issue orders, and then if people don't comply with them, all I've got left is to send them to jail. We've talked about this before in prior hearings.

"The Court finds that the mother, Ashley [Clark], is in contempt of the Court's order, which provided that Father was to have the child's birthday on that day, visitation day on that day, that it upset the plans of the child, upset the plans of the father. This was directly attributable to Ashley [Clark's] actions."

The district court also ordered Clark to pay Daniels' attorney fees in the amount of $752.50 and further ordered Clark to serve a 48-hour jail term in the Jefferson County, Kansas, jail to begin approximately 2 weeks after the date of the hearing.

Clark timely appeals.

4

DID THE DISTRICT COURT ERR IN FINDING CLARK IN CONTEMPT
AND IMPOSING A JAIL SANCTION?

Clark argues two points on appeal. First, she claims the district court erred when it held her in contempt of court. Second, Clark argues the district court abused its discretion by imposing a 48-hour jail sanction because she was not given advance notice of the possibility of jail time if found in contempt, a violation of her due process rights. We will address each argument in turn.

"We apply a dual standard of review to any appeal from a finding of contempt of court. We review de novo the trial court's determination that the alleged conduct constitutes contempt, while we review the impositions of sanctions for abuse of discretion." *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 154, 323 P.3d 184 (2014). A district court abuses its discretion if no reasonable person would take the view adopted by the trial court, if the decision is based on an error of law, or if the decision is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

1.    *Was Clark's withholding of parenting time contemptuous?*

Generally, contempt of court is defined as "disobedience to, disregard of, interference with, or disrespect of the court, by acts in opposition to its authority and the administration of justice, hindering, impeding, embarrassing, or obstructing the court in the discharge of its duties." 17 Am. Jur. 2d, Contempt § 2, p. 469. "Courts exercise contempt powers in order to maintain decorum in all court proceedings, punish those who show disrespect for the court or its orders, and enforce its judgments." *In re J.T.R.*, 47 Kan. App. 2d 91, 94, 271 P.3d 1262 (2012).

5

"Whether a particular act or omission is contemptuous depends upon the nature of the act or omission as well as all surrounding circumstances, including the intent and good faith of the party charged with contempt." *In re Marriage of Brotherton*, 30 Kan. App. 2d 1298, 1302, 59 P.3d 1025 (2002). "[A] party 'should not be punished for contempt for disobeying a decree, if the decree is capable of construction consistent with innocence.'" *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 927, 128 P.3d 364 (2006) (quoting *Ensch v. Ensch*, 157 Kan. 107, Syl. ¶ 3, 138 P.2d 491 [1943]).

The essence of Clark's argument is that there is insufficient evidence to support the district court's contempt finding. We are unpersuaded and see no useful purpose in detailing the evidence on this point other than to say there was ample evidence to support the district court's judgment. See *Goetz v. Goetz*, 181 Kan. 128, 135, 309 P.2d 655 (1957).

In brief, the Parenting Plan provided that Daniels was to "spend the child's birthday" with his daughter. Under protest, Daniels was only able to spend from 3 p.m. to 8:15 a.m. the next day with his daughter on her birthday. Black's Law Dictionary defines "day" as "[a]ny 24-hour period." Black's Law Dictionary 479 (10th ed. 2014). Additionally, under the common meaning of the word "day," it is not possible to read a construction consistent with Clark's innocence, especially taking into account the surrounding circumstances. It is difficult to imagine a rational interpretation of the word "day" as being only 9 hours of the calendar date in question—particularly when considering the age of the child (this was her 6th birthday)—yet Daniels received only a limited number of awake hours with his daughter on her birthday. Not only did M.D.'s birthday party have to be cancelled, it also appears that Clark has unclean hands because she fabricated a dance recital on M.D.'s birthday. Finally, the district court noted in its findings that Clark had a record of not complying with the court's orders. In light of all the surrounding circumstances, it appears Clark wanted to claim time on M.D.'s birthday for herself, even though it was Daniels' year to spend it with M.D. Because the district

court found that Clark deliberately and intentionally refused to comply with the Parenting Plan, the district court correctly determined that Clark's actions were contemptuous.

2.    *Were the sanctions imposed by the district court an abuse of discretion?*

Having determined that Clark's actions were contemptuous, we must next determine the appropriateness of the sanctions imposed by the district court. Classifying Clark's contempt guides us in evaluating the sanctions.

K.S.A. 20-1202 defines two classes of contempt:  "[C]ontempts committed during the sitting of the court or of a judge at chambers, in its or his presence, are direct contempts. All others are indirect contempts." Because Clark's conduct occurred outside the presence of the judge, her contempt is indirect.

"Contempt cases are further delineated as either criminal or civil by the character of the sanction imposed." *In re Marriage of Shelhamer*, 50 Kan. App. 2d at 155. "'Civil contempt is the failure to do something ordered by the court for the benefit or advantage of another party to the proceeding.'" *State v. Jenkins*, 263 Kan. 351, 358, 950 P.2d 1338 (1997) (quoting *Krogen v. Collins,* 21 Kan.App.2d 723, 726, 907 P.2d 909 [1995]). "Any civil contempt penalty is intended to be coercive, and relief can be achieved only by compliance with the order." *In re J.T.R.*, 47 Kan. App. 2d at 95. In fact, the party in contempt can be confined until compliance with the court's order is obtained. *Jenkins,* 263 Kan. at 358. However, in a civil contempt case, the court "must furnish the contemnor the 'keys to the jailhouse door' and allow her to purge her contempt at any time by complying with the order in question." *In re Marriage of Shelhamer*, 50 Kan. App. 2d at 155.

"'Criminal contempt, by contrast, is "conduct directed against the dignity and authority of a court or a judge acting judicially, with punitive judgment to be imposed in

7

vindication; its essence is that the conduct obstructs or tends to obstruct the administration of justice." [Citation omitted.]'" *Jenkins*, 263 Kan. at 358 (quoting *Krogen*, 21 Kan. App. 2d at 726).

> "Depending on circumstances, an act may support a finding of both criminal and civil contempt. . . .
>
> > "Contempts may be neither wholly civil nor altogether criminal, but may partake of the characteristics of both.
> >
> > . . . .
> >
> > "Where the primary purpose for a proceeding is to preserve the court's authority and to punish for disobedience, contempt is generally considered criminal; contempt is considered civil where the purpose of the proceeding is to coerce obedience to a court order, or if the relief afforded by a contempt sanction is designed to compensate a complainant for losses." 17 C.J.S., Contempt § 8 (1999).

Here, Clark's contempt can be characterized as both indirect civil and criminal contempt. The district court's award of Daniels' attorney fees appears to be an attempt to compensate Daniels for the financial losses he suffered in bringing the action. However, the 48-hour jail sanction is clearly punishment for Clark's ongoing refusal to comply with the district court's Parenting Plan order. The district court found Clark had "deliberately and intentionally thwarted and refused to comply with the child custody agreement, which provided that the father on this particular date was to have the day of the child's birthday for visitation." The criminal nature of the district court's jail sanction is buttressed by the fact that Clark could not engage in any act of compliance to avoid the jail sanction. M.D.'s birthday has come and gone, and Daniels will never be able to get that day back with his daughter regardless of how compliant Clark is with the district court's orders in the future.

8

a. *The 48-hour jail sanction*

Clark principally argues that the 48-hour jail sanction was an abuse of the district court's discretion because she was not given advance notice that jail time was a possibility if she was found in contempt and the sanction violates her due process rights. We agree.

Any sanction imposed in a contempt proceeding must be both procedurally and substantively proper. "The procedure for holding a party in indirect contempt . . . is set forth by statute and must be strictly construed against the movant." *Cyr v. Cyr*, 249 Kan. 94, Syl. ¶ 5, 815 P.2d 97 (1991). The petitioner must file a motion, accompanied by an affidavit setting forth the facts constituting the alleged violation, requesting an order to appear and show cause why the contemnor should not be held in contempt. K.S.A. 2016 Supp. 20-1204a(a). The order to appear and show cause must state the time and place of the hearing and must be served, along with a copy of the affidavit, on the alleged contemnor by the sheriff. K.S.A. 2016 Supp. 20-1204a(b).

Moreover, "if the court simply wants to punish a contemnor, then the due process rights that attend any criminal charge should apply. These rights include:

• notice of charge and possible penalty;
• court-appointed counsel if indigent;
• right to trial;
• privilege against self-incrimination;
• right to confront witnesses and to compel testimony." *In re J.T.R.*, 47 Kan. App. 2d at 101.

Here, while Daniels properly submitted a motion and affidavit and the district court issued the proper order which was served on Clark, we see nothing in the record to

9

show that Clark was given advance notice that her possible penalty for contempt could include jail time. Therefore, the district court violated Clark's due process rights by imposing a jail sanction without proper prior notice.

        b.       *The attorney fees sanction*

Finally, we briefly address the attorney fees sanction. We note that nowhere in Clark's brief—except in a heading—does she argue that the district court's attorney fees sanction is improper. It is well established that an issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball,* 292 Kan. 885, 889, 259 P.3d 676 (2011). The same is also true with points only incidentally raised and not argued. *Friedman v. Kansas State Bd. of Healing Arts,* 296 Kan. 636, 645, 294 P.3d 287 (2013). While Clark does raise the issue and make arguments in her reply brief, "[a] reply brief is an inappropriate vehicle for raising additional issues." *City of Wichita v. McDonald's Corp.*, 266 Kan. 708, 724, 971 P.2d 1189 (1999). Accordingly, we must deem the issue waived.

However, even if Clark had properly raised the issue of the attorney fees sanction, we see no abuse of discretion. First, an award of attorney fees is proper in a contempt proceeding as compensation to the prevailing party. *In re Marriage of Brotherton*, 30 Kan. App. 2d at 1303; see also 17 Am. Jur. 2d, Contempt § 209, p. 674 ("Reasonable attorney's fees are generally allowed to the prevailing plaintiff in a civil contempt proceeding, within the discretion of the trial court."). Second, even if Clark had not been found in contempt, the district court still has the power in family law cases to award attorney fees "as justice and equity require." K.S.A. 2016 Supp. 23-2715.

Accordingly, we vacate the district court's 48-hour jail sanction but affirm all other aspects of the district court's contempt order.

Affirmed in part and vacated in part.