NOT DESIGNATED FOR PUBLICATION

No. 122,219

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

J.R., Minor Child by and Through Natural Guardian L.G.,
*Petitioner*,

and

L.G.,
*Appellant*,

v.

I.R.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Opinion filed June 25, 2021. Sentence vacated.

*Razmi M. Tahirkheli*, of Tahirkheli & Premer-Chavez Law Office, L.L.C., of Kansas City, for appellant.

No appearance by appellee.

Before MALONE, P.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: L.G. has appealed an order of the Seward County District Court finding her in indirect civil contempt for violating a parenting plan applicable to her daughter J.R. Although the record on appeal is less than entirely clear, the district court appears to have imposed punitive sanctions of the sort appropriate for indirect criminal

1

contempt rather than coercive sanctions that mark civil contempt. We, therefore, vacate the sanctions against L.G. in the district court's contempt order.

The State brought this action against I.R., J.R.'s father, on behalf of L.G. and the child to require that he financially support his daughter. I.R. acknowledged his paternity, and the district court entered support and parenting orders. L.G. retained primary physical custody of J.R. subject to designated parenting time for I.R.

L.G. and I.R. have since moved from Seward County to the Kansas City metropolitan area, where they live separately. After visiting I.R. in February 2019, J.R., who was then about three years old, ostensibly told L.G. that her father had touched her inappropriately. L.G. took J.R. to an area hospital, and hospital personnel reported the matter to a local law enforcement agency. During the investigation, J.R. would not or could not attribute untoward conduct to her father. So the investigation was closed without any further action.

Nonetheless, beginning in March 2019, L.G. refused to allow I.R. to have any time with J.R. in violation of the district court's parenting order. L.G. and J.R. also moved, and L.G. did not give I.R. their new address, another violation of the parenting order.

I.R. then consulted with a lawyer who prepared and filed a motion for civil contempt of court against L.G. in Seward County for violating the parenting order. Roughly simultaneously, L.G. sought and obtained a temporary protection from abuse order in Johnson County District Court against I.R. on behalf of J.R. As is common, L.G. got the temporary order without notice to I.R. or a court hearing. The record on appeal indicates L.G. was served with the contempt of court motion and an order to appear in Seward County District Court about a week later. The Johnson County District Court later extended the temporary protection from abuse order through September 12, 2019.

2

The Seward County District Court held a hearing on I.R.'s contempt motion in June 2019. The district court found L.G. in contempt based on her failure to allow I.R. parenting time with J.R. *before* the Johnson County District Court issued the temporary PFA order and for failing to provide her new address to I.R. unless the PFA order permitted her to keep the address confidential. The district court concluded the PFA order excused L.G. from giving I.R. parenting time with J.R. *after* it was issued. The district court then continued the contempt proceeding to late August for "sentencing."

At the August hearing, the district court ordered L.G. to pay I.R. $500 in attorney fees for pursuing the contempt motion. The district court further ordered L.G. to serve 15 days in jail if she did not inform I.R. of her home address within 7 days or produce a PFA order that included a confidentiality provision covering the address. L.G.'s lawyer told the district court the temporary PFA order contained such a clause. But the district court was unable to immediately confirm that representation, although the temporary PFA had been filed in this case and was part of the record.

L.G. has appealed and duly filed a brief. I.R. has not filed an opposing brief.

L.G. challenges the sanctions the district court imposed on her after finding her in civil contempt as outlined in I.R.'s motion. We do not perceive disputed issues of material fact bearing on the narrow question of the propriety of the sanctions. An appellate court would customarily review an issue presented on undisputed facts as a matter of law without deference to the district court's determination. See *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011). In civil contempt proceedings, however, an appellate court reviews an affirmative finding of contempt without deference to the district court but examines the remedy for abuse of judicial discretion. *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002); *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 154-55, 323 P.3d 184 (2014). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the

3

circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). Without attempting to resolve the tension between those standards of appellate review, we apply an abuse of discretion standard because L.G. challenges the "remedy" or sanctions the district court imposed on her and the standard is the more favorable one for I.R.

Contempt of court can be either direct or indirect and either civil or criminal. *In re J.T.R.*, 47 Kan. App. 2d 91, 96, 271 P.3d 1262 (2012). Direct contempt entails contumacious or disrespectful conduct in the court's presence. Indirect contempt occurs outside the court's presence and typically involves the willful refusal to obey a court order, a form of contumacy. Here, we are looking at indirect rather than direct contempt.

The division between civil contempt and criminal contempt turns on the remedy. Civil contempt aims to compel a delinquent party to comply with a court order in the future. Upon a finding of civil contempt, a court may jail a recalcitrant party for an indefinite period until he or she agrees to comply with the order. The court may instead choose to impose a periodic fine—daily or weekly, for example—or some other coercive sanction until the party complies. Criminal contempt, however, punishes a party for a past violation of an order with a fixed fine or jail sentence as a penalty. Criminal contempt then vindicates a court for a party's past violation of an order rather than seeking the party's future compliance with the order. See *In re Marriage of Shelhamer*, 50 Kan. App. 2d at 155-56 (discussing direct and indirect contempt and civil and criminal remedies); *In re J.T.R.*, 47 Kan. App. 2d at 95-96.

There are also procedural differences between civil contempt and criminal contempt. Civil contempt must be proved by clear and convincing evidence. 17 C.J.S. Contempt § 141; 17 Am. Jur. 2d Contempt § 180. Criminal contempt, however, invokes

4

greater protections available to all defendants facing criminal prosecution: proof beyond a reasonable doubt; a presumption of innocence; the right to counsel; the right against self-incrimination; and presumably the right to jury trial if the punishment will exceed six months in jail. *In re J.T.R.*, 47 Kan. App. 2d at 99-100; 17 C.J.S. Contempt §§ 142, 145; 17 Am. Jur. 2d Contempt § 180.

With those principles in mind, we examine L.G.'s appellate challenge to the sanctions the district court imposed on her for the alleged civil contempt. First, we consider the 15-day jail sentence. Although the appellate record is ambiguous, we presume the penalty was never carried out because the temporary PFA order clearly allowed L.G. to keep her residential address confidential—the condition the district court found would void the jail penalty. In that respect, the district court misunderstood (or did not fully understand the relevant facts) in fashioning the penalty. The misunderstanding, thus, fostered an abuse of discretion.

Moreover, a fixed jail sentence, such as the 15-day term imposed on L.G., entails a penalty for criminal contempt. But L.G. was not accused of or found guilty of criminal contempt. To the extent L.G. could have been liable for civil contempt at all (something we question but assume to be true based on how the issues have been framed on appeal), the appropriate sanction would have been an indeterminate incarceration with release conditioned on L.G.'s promise to abide by the parenting order in the future. So the district court stepped outside the settled legal framework for civil contempt when it imposed a fixed jail sentence on L.G. That would also amount to an abuse of discretion in this circumstance.

We, therefore, vacate the 15-day jail sentence, assuming it neither has been withdrawn nor has otherwise become moot.

The district court's order that L.G. pay I.R. $500 in attorney fees was not a conditional sanction but appears to have been imposed as a penalty on L.G. for her violation of the parenting order in March 2019. As such, the fee award was an impermissible punishment for a past violation of the district court's parenting order rather than a coercive sanction to induce future compliance. Its imposition, then, amounted to an abuse of discretion. We vacate the district court's order that L.G. pay I.R. $500 in attorney fees. We do not consider whether other legal grounds might permit a district court to award attorney fees to a party prevailing on a motion for indirect civil contempt in some circumstances.

On appeal, L.G. also argues the district court's contempt finding should be set aside because she unilaterally denied I.R. parenting time to protect J.R. She seems to advance an argument for a legal defense of necessity or greater-good in a contempt proceeding. See *City of Wichita v. Tilson*, 253 Kan. 285, 288-91, 855 P.2d 911 (1993) (discussing contours of necessity defense and indicating Kansas has not considered or recognized such a defense); see also *State v. Roeder*, 300 Kan. 901, 919, 336 P.3d 831 (2014) (Upon rejecting necessity as a possible defense on the facts of that criminal prosecution, the court states: "As in *Tilson,* we decline to definitively state whether the necessity defense has any life in this state under other circumstances."). Here, as we have explained, L.G. premised her violation of the parenting order on her uncorroborated representation that J.R. said I.R. had acted inappropriately. L.G., however, neither cites any authority for such a defense nor explains why, as a matter of law, we should recognize one. We decline to consider the point. See *State v. Gonzalez*, 307 Kan. 575, 592, 412 P.3d 968 (2018).

The remedies or sanctions the district court imposed on L.G. for indirect civil contempt are vacated.